## JOHN Y. DAY *vs.* WILLIAM Y. DAY.

ACT OF 1862, CH. 129, SEC. 3, CONSTRUCTION OF: LANDS COVERED BY NAVI-GABLE WATERS.—Looking to the general purpose disclosed by the affirmative provisions of the 1st and 2nd sections of the Act of 1862, ch. 129, it is clear that the clause in the 3rd section, prohibiting the issue of any patent of land covered by navigable waters, should be so construed as to apply to all lands below high water mark, or in terms still more comprehensive, to embrace any lands to which the rights and privileges conferred by this Act, could attach.

PAYMENT OF COMPOSITION MONEY, EFFECT OF.—The payment of composition money by the party applying for a patent, does not, as between him and the State, establish the relation of contracting parties. Strictly speaking, the payment is made as a part of the proceedings necessary to the final adjudication of the case, and as such, other things being equal, secures nothing more than a right to be preferred when the patent is granted.

The question whether a patent shall issue, depends not alone, on the proceedings had in any given case, but on the further fact that the land for which a patent is sought, may by law be granted in that mode, when the question as to the issue of the patent comes to be finally adjudicated.

The payment of the composition money by the caveatee, vested him with no specific interest in the land described in the certificate, as "containing ten acres, nine and a half acres, part thereof, being covered by navigable water at high tides."

THE ACT OF 1862, CH. 129, is one relating to the interests and property of the public; and the Courts are bound to take judicial notice of it, whether the parties on either side rely upon it or not: and in applying its imperative provisions to this case, it is obvious that no patent can issue for the land in dispute.

APPEALS: LAWS EXISTING AT THE DATE OF FINAL DECISION, TO GOVERN IN CASES OF APPEAL.—The Court of Appeals is bound to decide according to laws existing at the time of its decision, even though a judgment rightful when rendered by the Court below, should be reversed as a consequence.

APPEAL from a decision of the Commissioner of the Land Office.

This appeal was taken on the 16th August 1860, from a decision of the Commissioner of the Land Office, rendered on the 18th of November 1859, overruling a *caveat* filed by the appellant to the issuing of a patent to the appellee for *"Mud Island."*

Day vs. Day

A common warrant was issued out of the Land Office to the appellee, on the 3rd of February 1836, for ten acres of land.   On this warrant the survey was made, on the 18th of February 1836, of ten acres of land lying in Baltimore County, and the certificate of the surveyor was returned to the Land Office on the 2nd of February 1837. This certificate was caveated by the appellant on the 22nd of June 1853, and again more formally on the 30th of November 1857.   The composition money on this certificate was not paid until the 28th of October 1857.

The certificate of survey describes the land as: "containing ten acres, nine and a half acres, part thereof, as covered by navigable water at high tides."   The record also shows that on the 1st of December 1826, a patent was granted to the appellee for "Snipe Island."   The cause was heard on the 3rd of November 1859, when, various statements, depositions and certificates were filed by the appellant, tending to show that "Mud Island" was only alluvion to "Snipe Island."   Evidence was also adduced on the part of the appellee to show that "Mud Island" was a distinct tract, separated from "Snipe Island" by a swash or thoroughfare, through which the water flowed.   The grounds of the decision of this Court render it unnecessary to state more than the general effect of the evidence.

On the 18th of November 1859, the Commissioner filed an opinion and order overruling the caveat, from which the caveator appealed.

The cause was argued before Bowie, C. J., Bartol, Goldsborough, Cochran, and Weisel, J.

O. Miller, for the appellant.

1st.  At the time the warrant was issued and the survey made for the appellee, and indeed up to the time the decision in the case was rendered, there was nothing in

the laws of the State forbidding the issuing of a patent for land covered by navigable water. But since this appeal was taken the Act passed March 3rd 1862, ch. 129, has expressly declared, that "no patent shall hereafter issue for land covered by navigable water." When this appeal was taken a bond was given to stay proceedings in accordance with the provisions of Article 5, section 45 of the Code, and no patent has ever been issued for this land. In view of the law above cited, can such a patent now issue? The appellant will insist that it cannot. This Court must look at the law as it now exists. The language of the Act of 1862, is broad and sweeping—pending cases are not excepted, "no patent shall hereafter issue," &c. "If subsequent to the judgment and before the decision of the Appellate Court, a law intervenes and positively changes the rule which governs, the law must be obeyed or its obligation denied;" *United States vs. Schooner Peggy*, 1 *Cranch*, 103, decided by the Supreme Court, *per* MARSHALL, C. J. See also, *Keller vs. The State*, 12 *Md. Rep.*, 322, and cases there cited. That the patent, if it should issue, would violate this law, is clear beyond doubt. The patent must follow the certificate, which describes a large part of the ten acres as covered by navigable water. Its location on the plat in this case, shows the same thing, for a portion of it extends into the Gunpowder river, beyond any location, made even by the appellant, of "*Snipe Island*." But besides this, the appellee has no standing in Court, unless he shows that there was navigable water between "*Mud Island*" and "*Snipe Island*," and all his testimony is directed to show this; and yet the lines of "*Mud Island*" will be seen to cross and embrace a considerable part of the channel, which he contends is navigable water.

2nd. Again, if the first point should not be deemed conclusive of the case, the appellant will insist, that

whatever land there is within the lines of "*Mud Island,*" as located in this case, is gained by alluvion to "*Snipe Island,*" (if indeed it should be decided that the true location of "*Snipe Island,*" does not include the same,) and therefore no patent should issue therefor to the appellee. *Giraud's Lessee vs. Hughes,* 1 *G. & J.,* 249. *Chapman vs. Hoskins,* 2 *Md. Ch. Dec.,* 485. Act of 1862, ch. 129.

3rd. That the land called "*Mud Island*" is embraced within the lines of "*Snipe Island,*" as properly located, and has for more than twenty years been in the possession of the appellant, and therefore no patent can issue therefor. *Steyer vs. Hoye,* 12 *G. & J.,* 202. *Twigg vs. Jacob,* 4 *Md. Ch. Dec.,* 541. *Lee vs. Hoye,* 1 *Gill,* 188. *Smith vs. Baker,* 4 *Md. Chancery Dec.,* 29. Act of 1818, ch. 90.

4th. That the appellee having failed to comply with the rules of the Land Office, in not paying the composition money for more than twenty-one years after the date of his warrant, must be considered as having abandoned his title founded upon that warrant, and therefore no patent should issue therefor. Act of 1781, ch. 20, sec. 6. Act of 1795, ch. 88, secs. 9 and 10. *Hoye vs. Johnson,* 2 *Gill,* 291. *Chapman vs. Hoskins,* 2 *Md. Chancery Dec.,* 485.

5th. The irregularities and illegality in the proceedings to take testimony and in the conducting of the case, are sufficient not only to exclude much of the testimony in the case, but to warrant a reversal of the decision below, and the sending the case back for a new trial. Power is given to the Commissioner of the Land Office by Article 54, sec. 14 of the Code to hear and determine all disputes concerning the issuing of patents, and in all disputes that shall come before him he shall have full power to decree thereon according to equity and good con-

science and the principles established in Courts of Equity.
By section 32, he is required to hear and determine every
*caveat* within twelve months from the entering of the
same, unless he shall under special circumstances, give
further time to the parties. And by section 35, he "may
prescribe rules to regulate the conduct of surveyors in
making surveys, &c., and he shall in all things regulate
his proceedings by the usages and principles which have
heretofore been established by the practice of the Land
Office, not inconsistent with this Article or the principles
of equity." See also *Landholder's Assistant*, 379, 380,
and the Act of 1782, ch. 38.

The record shows that these rules and principles have
been violated in many important particulars. 1st. In
taking testimony at the house of the appellee in the
absence of the appellant, and not on the premises near
"*Snipe Island*," where, according to notice and agree-
ment, it was to be taken, and where the appellant was
present and ready to proceed. In this connection it will
be insisted, that all the depositions taken by Quinlan,
the magistrate, on the 18th, 21st and 31st of October
1859, were illegally taken and should be rejected. 2nd.
In the refusal of the magistrate, Quinlan, to issue sum-
mons for witnesses to testify for the appellant, when
applied to by the appellant for that purpose on the 13th
of October, as stated by Quinlan in his certificate. 3rd.
In allowing depositions to be read, taken before a magis-
trate of another State, out of the State of Maryland.
The appellant knows of no rule or practice of the Land
Office, and certainly none of equity, allowing such depo-
sitions to be read, even if taken on notice given.

*A. W. Machen* and *R. J. Gittings*, for the appellee,
argued:

1st. That the Act of 1853, ch. 415, is unconstitutional.
The jurisdiction of the Commissioner has been exercised

and acquiesced in ever since the passage of the law, and adopted by this Court. Const. Art. 7, sec. 8. *Dorothy vs. Hillert,* 9 *Md. Rep.,* 570.

2nd. The general rule of the Land Office is to issue the patent when the right is doubtful, in order that the party may not be deprived of the privilege of taking the judgment of a court of law upon its efficacy. *Jones vs. Bradley,* 4 *Md. Ch. Dec.,* 167. *Dorothy vs. Hillert,* 9 *Md. Rep.,* 570. *Cunningham vs. Browning,* 1 *Bl. Ch. R.,* 325. *Ridgely vs. Johnson,* 1 *Bl. Ch. R.,* 316, (note.)

3rd. The certificate having been regularly returned to the Land Office, and examined and passed by the Examiner General, and the composition money subsequently paid in good faith and accepted by the State, the appellee is entitled to a patent, notwithstanding the lapse of time—the only effect of delay being the risk of being deprived of the land by a proclamation warrant. *Kilty's Landholder's Assistant,* 469, 319, 480. *Laws of Maryland,* 1781, *ch.* 20, *sec.* 6. *Ib.* 1795, *ch.* 88, *secs.* 9 *and* 10. *Jones vs. Bradley,* 4 *Md. Ch. Dec.,* 167. *Dorsey on Ejectment,* 88.

4th. *"Mud Island"* is not alluvion to *"Snipe Island,"* but separate from it. The caveator's evidence was objected to in the Land Office, and is still objected to as incompetent, not having been taken in pursuance of the order of the Commissioner. But if allowed, the evidence shows conclusively that *"Snipe Island"* does not embrace *"Mud Island."* If run by patent lines, it stops short of it, as shown by the surveyor's return. If run by the calls, which are for "low water mark," the appellee's location is the true one: whether run by course and distance, or by the calls, it excludes *"Mud Island."*

5th. The evidence shows that *"Snipe Island"* itself was but alluvion to the appellee's main land, and therefore the patent to *"Snipe Island"* cannot avail the appellant as giving him title to it.

6th. The fourth reason assigned, if it had any foundation in fact, would only have been ground for a postponement of the trial in the Land Office, which was not even asked for. In fact the record shows that the greater portion of the time allowed by the Commissioner was consumed by the appellant in taking evidence, and the appellee is the only one entitled to complain.

COCHRAN, J., delivered the opinion of this Court.

The first objection presented by the appellant to the issue of a patent on the certificate of survey in this case, is founded on the Act of 1862, chapter 129, which expressly prohibits the issue of any patent of land covered by navigable waters. The survey was made under a common warrant, issued from the Land Office on the 3rd of February 1836, and the certificate thereof, returned on the 2nd of February 1837, states that nine and a half of the ten acres described, are covered by navigable water at high tides. The proceedings of the appellee to acquire a title from the State, appear to have been suspended from that time until 1857, when, the composition money was paid, and the *caveat* of the appellant filed; the appeal to this Court having been taken on the 9th of August 1860, from an order overruling the *caveat*, passed by the Commissioner of the Land Office on the 18th of November 1859.

The proceedings up to and including the appeal, thus appear to have been taken before the Act of 1862 was passed; and the appellee therefore insists, that this case should be excepted from its operation and effect. The disposition of the appeal, in our opinion, depends on the determination of that question. We find nothing in the evidence tending in any degree to qualify or contradict the description of the land contained in the certificate of survey, and although no question was raised as to whether the terms of the Act would embrace land

Day *vs.* Day.

described, as "covered by navigable water at high tides," yet a brief notice of that point would seem to be appropriate.

The Common Law distinction between navigable waters, and rivers or streams not navigable, is founded on the difference of the rights to which they are respectively subject; the entire property of the former being vested in the public, while the latter belong to riparian proprietors, although in some cases subject to a qualified public use. Rivers or streams within the ebb and flow of tide, to high water mark, belong to the public, and in that sense are navigable waters; all the land below high water mark, being as much a part of the *jus publicum*, as the stream itself. The owners of adjacent ground had no exclusive right to such lands, nor could any exclusive right to their use be acquired, otherwise than by an express grant from the State. The Act of 1862 was intended to vest these owners of contiguous lands with rights and privileges not recognized by the Common Law, and to that end, the 1st section declares,—that the proprietor of land bounding on any of the navigable waters of the State, should be entitled to all accretions thereto by the recession of water, whether before or thereafter formed or made, by natural causes or otherwise. The 2nd section goes further, and not only vests such owners with the exclusive privilege of extending improvements from their lands into the waters in front thereof, but declares that these rights and privileges shall pass to the successive owners of such lands, as incident to their respective estates. Looking then to the general purpose disclosed by these affirmative provisions, it is clear that the clause in the 3rd section prohibiting the issue of any patent of land covered by navigable water should be so construed, as to apply to all lands below high water mark, or in terms still more comprehensive, to embrace any lands, to which the rights and privileges conferred

68    v. 22.

by this Act could attach. This construction, assuming that the Act applies to the present case, would seem to establish the right of the appellant to claim the land in question as an accretion to "*Snipe Island;*" for the testimony of Brown, Woods, Ashur and Hawkins, most of them witnesses examined on behalf of the appellee, proves, beyond question, that the land described in the certificate of survey, is an alluvial formation, connecting at low tides with "*Snipe Island.*" But without expressing a more decided opinion on that point, we proceed to consider the main question: whether the Act of 1862 applies to this case.

In our opinion, the payment of composition money by the appellee, did not, as between him and the State, establish the relations of contracting parties. According to the settled practice of the Land Office, the payment of it was necessary before the question whether a patent should be granted, could be considered, and under no circumstances could the amount so paid be refunded to him. That a *caveat* to his application for a patent could be entered and sustained, without entitling him to a return of the composition money, is neither disputed nor doubted, and under such circumstances, it would seem impossible for money paid by way of composition, to take the technical character of a consideration, binding the State to a transfer of her title. Strictly speaking, the payment is made as a part of the proceedings necessary to the final adjudication of the case, and as such, other things being equal, seems nothing more than a right to be preferred when the patent is granted. The question whether a patent shall issue, depends not on the proceedings had in any given case alone, but on the further fact, that the land for which a patent is sought, may by law be granted in that mode, when the question as to the issue of the patent comes to be finally adjudicated. The payment made by the appellee here, vested him with no

specific interest in the land described in the certificate, and his relation to the title is necessarily the same as it would have been, had all his proceedings been taken since the Act of 1862 was passed. This Act is one relating to the interests and property of the public, and we are bound to take judicial notice of it, whether the parties on either side rely upon it or not. In applying its imperative provisions to the present case, it is obvious that no patent can issue for the land in dispute. It is proper, however, to refer to another well settled rule, which clearly leads to the same results; and that is, that we are bound to decide according to existing laws, even though a judgment, rightful when rendered by the Court below, should be reversed as a consequence. As we have seen, there was no interest vested in the appellee to except this case from the operation of the Act, and the rule above stated, although broad enough to embrace a much stronger case where public interests are affected, would necessarily apply. In the case of the *United States vs. Schooner Peggy,* 1 *Cranch,* 103, it was said: "That in mere private cases, between individuals, a Court will struggle hard against a construction which will, by a retrospective operation, affect the rights of parties; but in great national concerns, where individual rights acquired by war, are sacrificed for national purposes, the contract making the sacrifice ought always to receive a construction conforming to its manifest import; and if the nation has given up the vested rights of its citizens, it is not for the Court but for the Government to consider whether it is a proper case for compensation. In such a case the Court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful, when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside." The rule here laid down has been adopted and often acted upon in this State, as will more fully appear by reference to the case

of *Keller vs. The State,* 12 *Md. Rep.,* 322. We think, under the present circumstances of the case, that no patent, of the land in question, should issue; and shall therefore reverse the order of the Commissioner of the Land Office, and rule the *caveat* good, each party to pay his own costs.

*Order reversed.*

(Decided March 15th 1865.)