7 A.3d 38

**Elizabeth M. CARVEN**

v.

**STATE RETIREMENT & PENSION
SYSTEM OF MARYLAND.**

**No. 58, Sept. Term, 2009.**

Court of Appeals of Maryland.

Oct. 26, 2010.

Edward J. Lilly (Jennifer L. Lilly of The Law Offices of Peter G. Angelos, P.C., Baltimore, MD; Sean P. Carven, Bel Air, MD), on brief, for appellant/cross-appellee.

Rachel S. Cohen, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for appellee/cross-appellant.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

In this case we are asked to consider whether an enrollee in the Maryland Employees' Pension System ("EPS") who is receiving benefits under that system is eligible for membership in Maryland's Judges' Retirement System ("JRS") if subsequently employed in a position that otherwise qualifies for JRS membership.

I.

The EPS and the JRS are separate benefit-providing systems within the State Retirement and Pension System of Maryland ("SRPS").[1] Both systems are administered by the

---

1. Maryland Code (2004 Repl.Vol., 2007 Cum.Supp.), § 21–102 of the State Personnel and Pensions Article provides:
   The [SRPS] consists of:
   (1) the Correctional Officers' Retirement System, established on July 1, 1974;
   (2) the Employees' Pension System, established on January 1, 1980;
   (3) the Employees' Retirement System, established on October 1, 1941;
   (4) the Judges' Retirement System, which consists of:
   (i) the contributory plan, established on July 1, 1969; and
   (ii) the noncontributory plan, established on April 7, 1904;
   (5) the Legislative Pension Plan;

SRPS Board of Trustees ("the Board"). In addition to the Board, the General Assembly created the State Retirement Agency ("the Agency"), as an agency of the Board, "to carry out the administrative duties of the several systems" within the SRPS. Maryland Code (2004 Repl.Vol., 2007 Cum.Supp.), §§ 21–117, 21–119 of the State Personnel & Pensions Article ("SPP").[2] During the time period relevant to this case, membership in the EPS was available to, among others, "regular employee[s] whose compensation is provided by State appropriation or paid from State funds" and "appointed or elected official[s] of the State," and membership in the JRS was available to, among others, judges on the Maryland Court of Appeals, the Court of Special Appeals, the county circuit courts, and the district courts, as well as commissioners of the State Workers' Compensation Commission ("WCC"). *See* SPP §§ 23–201(a), 27–201. Appellant, Elizabeth Madeline Carven, instituted this case after the death of her husband, Arthur Frank Carven, III, to contest the denial of his application for JRS membership while he served as a WCC commissioner.[3]

From 1979 until 1987, Commissioner Carven served as an Assistant State's Attorney for Harford County. In 1987,

---

(6) the Local Fire and Police System, established on July 1, 1989;

(7) the Law Enforcement Officers' Pension System, established on July 2, 1990;

(8) the State Police Retirement System, established on July 1, 1949;

(9) the Teachers' Pension System, established on January 1, 1980;

(10) the Teachers' Retirement System, established on August 1, 1927; and

(11) any other system or subsystem that the Board of Trustees administers.

2. Unless otherwise indicated, all subsequent references to statutory provisions are to the Maryland Code (2004 Repl.Vol., 2007 Cum.Supp.), which contains the relevant statutes in effect at the time of the April 23, 2007, administrative decision denying the petition for an administrative hearing.

3. Appellant is also a cross-appellee because the SRPS filed an appeal from the Circuit Court as well. For simplicity, we refer to Mrs. Carven as the Appellant and the SRPS as Appellee.

Commissioner Carven was appointed to the Governor's office to serve as the Executive Assistant for Public Safety, and he later served as Assistant Attorney General for the Maryland Department of the Environment until his retirement on January 1, 1996. At that time, Commissioner Carven had accrued 16 years and 6 months of service credit, qualifying him to receive retirement benefits through the EPS. After retiring, Commissioner Carven practiced law in the private sector until he was appointed County Attorney for Harford County in 1998.

As County Attorney, Commissioner Carven's income exceeded the EPS earnings limitation, and, consequently, his retirement allowance ceased. The Agency notified Commissioner Carven that he was ineligible to earn additional service credit as County Attorney even though Harford County was a participating employer within the SRPS.[4] Commissioner Carven served as County Attorney for five and a half years until he was appointed to the WCC in 2004. As indicated above, commissioners on the WCC are generally eligible for membership in the JRS. When Commissioner Carven notified the SRPS of his employment with the WCC, however, the Agency informed him that he remained subject to an earnings limitation that prevented him from collecting his retirement allowance. The Agency also notified him that he could not become a member of the JRS because he was an EPS retiree, and retirees of the EPS were ineligible to rejoin any State system.[5]

---

**4.** SPP § 20–101(dd) defines a "participating employer" as "the employer of an individual who, because of the employment relationship, is eligible for membership in a State system." State system "means a retirement or pension system that is included in the [SRPS]." SPP § 20–101(pp).

**5.** On July 1, 2008, after the Agency's final decision on April 23, 2007, denying Mrs. Carven's request for a hearing, the General Assembly enacted SPP § 23–408, which created an exception to the general prohibition against EPS retirees rejoining any State system. Section 23–408, inapplicable here because it was not in effect at the time of the Agency's decision, eliminates the conflict that gave rise to this case by, among other things, permitting EPS retirees who are eligible for JRS

On May 6, 2004, Commissioner Carven wrote to the Board chairman requesting "assistance" in reference to his "new position as a Workers' Compensation Commissioner and entry into the [JRS]." Commissioner Carven argued that the Agency's position was "unfair, inequitable, and erroneous" because the prohibition on re-enrollment in a system was meant to prevent employees from earning service credit in the same system from which they were already receiving a retirement allowance, and EPS retirees participating in the JRS would earn service credit in a system entirely separate from the system from which they had been receiving their retirement allowance. In support of his position, Commissioner Carven cited various statutory provisions and an Attorney General's Opinion.

In a letter dated May 24, 2004, the executive director of the Agency responded to Commissioner Carven's letter, informing him that EPS retirees "are not permitted to rejoin any State system if they are reemployed by the State, including the [JRS]." After explaining the statutory and legal grounds for the Agency's decision, the executive director noted that Commissioner Carven could "request an administrative appeal of this action by submitting a Petition for Hearing to [him] in the format required under COMAR 22.03.04.07" and that Commissioner Carven "must submit a petition for hearing within 180 days of the date of [the] letter." The letter also stated that, if Commissioner Carven failed "to submit a petition for hearing within 180 days of [the] letter, [he would] not have any further right to appeal [the] matter."

Rather than request an administrative appeal, however, Commissioner Carven sought a legislative remedy. On July 7, 2005, Delegate Kevin Kelly, on Commissioner Carven's behalf, wrote to Robert A. Zarnoch, then Counsel to the General Assembly,[6] requesting an opinion as to whether a "Commis-

---

membership to elect to receive service credit in the JRS, subject to a temporary suspension of their EPS allowance. Maryland Code (2009 Repl.Vol.).

**6.** Mr. Zarnoch is now a Judge on the Court of Special Appeals.

sioner [could] voluntarily forgo his service allowance during his term on the [WCC] and thereafter receive creditable service in the [JRS] during his term on the Commission." On September 14, 2005, Robert N. McDonald, Chief Counsel of Opinions and Advice in the Attorney General's Office, responded in a letter to Delegate Kelly that "the Commissioner may not voluntarily give up his service retirement allowance under EPS in order to earn creditable service in the JRS during his term with the Commission." McDonald further advised Delegate Kelly that, "[t]o rectify the situation, it would be necessary to obtain corrective legislation."

Commissioner Carven attempted to secure the passage of such legislation in two legislative sessions, but was unsuccessful. On February 3, 2005, Senate President Thomas V. "Mike" Miller, Jr., introduced Senate Bill 419, which would allow EPS retirees "who are appointed as members of the [WCC] to receive service credit in the [JRS] while receiving a service retirement allowance from the [EPS]." S.B. 419, 420th Gen. Assem., Reg. Sess., (Md.2005). The bill did not pass. On March 19, 2006, Delegate Kelly introduced similar legislation, House Bill 1738, that would allow retirees of EPS to "repay certain benefits ... to the Board of Trustees" and require the Board "to suspend the retirement allowance" of retirees of the EPS while allowing those retirees to "receive a normal service retirement benefit from the [JRS]." H.B. 1738, 421st Gen. Assem., Reg. Sess., (Md.2006). That legislation also failed.

On June 17, 2006, Commissioner Carven completed a written application for JRS enrollment, and, on September 7, 2006, after Commissioner Carven's death, Mrs. Carven received a letter from the SRPS informing her that, under Maryland law, Commissioner Carven was ineligible for membership in the JRS.

### The Litigation

On January 12, 2007, Mrs. Carven, as Commissioner Carven's sole heir and the beneficiary designated in his JRS membership application, filed a petition for an administrative hearing pursuant to Code of Maryland Regulations ("CO-

MAR") 22.03.04.07.[7] On February 12, 2007, the Agency's executive director notified Mrs. Carven that he was recom-

---

7. COMAR 22.03.04.07, entitled "Petitions for Hearing," provides:

A. In a contested case, a claimant may request a hearing by submitting a petition for a hearing to the Executive Director within the time limitations specified in Regulation .06B of this chapter.

B. The petition shall:

(1) Be in writing;

(2) Include:

(a) The name, address, and telephone number of the claimant,

(b) If the claimant is an individual, the claimant's Social Security number, and

(c) The name, address, and telephone number of the claimant's attorney, if any;

(3) Describe the claimant's interest in the matter for which the claimant is petitioning for a hearing;

(4) Contain:

(a) A simple and concise statement of the question or controversy,

(b) A statement of the relief requested from the Board of Trustees; and

(c) A summary of the Retirement Agency's decision on the question or controversy; and

(5) Include an affirmation by the claimant, under oath, that the facts contained in the petition are true to the best of the claimant's knowledge, information, and belief.

C. Review of Petition for Hearing by Executive Director. Upon receipt of a petition for hearing, the Executive Director shall:

(1) Refer the claimant's petition for a hearing as provided under Regulation .08 or .09 of this chapter; or

(2) Refer the claimant's petition for a summary decision in accordance with § D of this regulation.

D. Summary Decision by the Board of Trustees.

(1) Hearing Notice.

(a) The Executive Director shall issue a written notice of hearing to the claimant that conforms with State Government Article, § 10–208, Annotated Code of Maryland.

(b) The notice of hearing shall state:

(i) The date, time, and location of the hearing;

(ii) A short and simple statement of the matters that are at issue at the hearing;

(iii) The recommended summary decision of the Executive Director;

(iv) The claimant's right to appear and present a written response or oral argument to the Administrative Committee and the Board of Trustees; and

(v) The claimant's right to be represented by an attorney at the hearing.

(2) Administrative Committee Review.

mending that the Board issue a summary decision denying her request. The Agency based its decision, in part, on Commissioner Carven's failure to request a hearing within 180 days of the May 2004 letter notifying Commissioner Carven of his ineligibility for membership in the JRS and apprizing him of the time limit to submit a petition for a hearing. The letter further explained the Agency's position that the re-employment rules for retirees of the EPS prohibit retirees from earning further credits toward retirement while re-employed with any participating employer. In a letter dated April 23, 2007, the Board notified Mrs. Carven of its decision to adopt the Agency's recommendation and deny her request.

On May 7, 2007, Mrs. Carven filed a petition for judicial review in the Circuit Court for Harford County. On November 27, 2007, that court transferred the case to the Circuit

----

(a) Following review of the claimant's petition for hearing, the Executive Director's recommended summary decision, and any response by the claimant or claimant's counsel, a majority of the Administrative Committee shall:

(i) Issue a proposed summary decision; or

(ii) Refer the petition for a hearing as provided under Regulation .08 or .09 of this chapter.

(b) If the Administrative Committee issues a proposed summary decision, the Executive Director shall schedule the matter to be heard at a meeting of the Board of Trustees.

(3) Board of Trustees' Review.

(a) Following review of the claimant's petition for hearing, the Executive Director's recommended summary decision, the Administrative Committee's proposed summary decision, and any response by the claimant or claimant's counsel, a majority of the Board of Trustees shall:

(i) Issue a summary decision; or

(ii) Refer the petition for a hearing as provided under Regulation .08 or .09 of this chapter.

(b) The Board of Trustees shall issue its decision in writing within 90 days after the hearing.

(4) Standard for Summary Decision.

(a) The Board of Trustees may issue a summary decision if it finds that:

(i) There is no genuine dispute of material fact; and

(ii) The Agency or the claimant is entitled to prevail as a matter of law.

(b) A summary decision by the Board of Trustees is the final administrative decision of the case.

Court for Baltimore County because the judges of the Circuit Court for Harford County had recused themselves from the case. After a hearing on April 30, 2008, the Circuit Court for Baltimore County issued a memorandum opinion and order dated October 31, 2008, reversing the Board's determination that Carven's petition for a hearing was untimely but upholding the Board's decision to deny the membership application.

The court, relying on COMAR 22.03.04.06B, which provides that "[a] petition for a hearing shall be filed within 180 days of the date that a claimant is given notice of an Agency action," and COMAR 22.03.04.02B(2), which defines a claimant as "a participant or a participating employer that has filed a request for a hearing," found that Commissioner Carven was not subject to the time limitation at the time he received the May 2004 letter. The court reasoned that, because Commissioner Carven had not yet formally applied for membership in the JRS when he received the letter, he did not fall within the COMAR definition of "claimant" at that time. Additionally, citing COMAR 22.03.04.02B(5), which defines a hearing as "a contested case hearing as defined by the Administrative Procedure Act [ ("APA") ]," and the APA, which defines, in relevant part, a contested case as "a proceeding before an agency to determine ... a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing," § 10–202(d) of the State Government Article ("SG"), the court further found that Commissioner Carven's efforts to resolve the eligibility dispute were informal and did not rise to the level of a contested case as required by COMAR's definition of a hearing. Accordingly, the Circuit Court found that the petition for a hearing was not time barred because Commissioner Carven was not subject to the 180–day time limitation until after he submitted a written application for JRS membership.

As to whether Commissioner Carven was barred from membership in the JRS based on his status as an EPS retiree, the court affirmed the Board's decision. Relying on SPP § 23–407(e), which provides that "[a]n individual who is receiving a

service retirement allowance or a vested allowance and who is reemployed by a participating employer may not receive creditable service or eligibility service during the period of reemployment," the court determined that Commissioner Carven was ineligible for JRS membership because he was an EPS retiree reemployed at a participating employer, the WCC, and sought reenrollment in another State system, the JRS. *See* § 23–407(e) (establishing the earnings and service credit limitations for reemployed retirees).[8]

On November 13, 2008, Mrs. Carven timely noted an appeal to the Court of Special Appeals, and on November 21, 2008, the SRPS noted a cross-appeal to that same court. Before

---

**8.** SPP § 23–407 provides, in relevant part:

(b) *In general.*—Except as provided in subsection (m) of this section, an individual who is receiving a service retirement allowance or a vested allowance may accept employment with a participating employer on a permanent, temporary, or contractual basis, if:

(1) the individual immediately notifies the Board of Trustees of the individual's intention to accept this employment; and

(2) the individual specifies the compensation to be received.

(c) *Limitation on earnings; reduction of retirement allowance.*—(1) Except as provided in § 23–408 of this subtitle, the Board of Trustees shall reduce the allowance of an individual who accepts employment as provided under subsection (b) of this section if:

(i) the individual's current employer is a participating employer other than the State and is the same participating employer that employed the individual at the time of the individual's last separation from employment with a participating employer before the individual commenced receiving a service retirement allowance or vested allowance;

(ii) the individual's current employer is any unit of State government and the individual's employer at the time of the individual's last separation from employment with the State before the individual commenced receiving a service retirement allowance or vested allowance was also a unit of State government; or

(iii) the individual becomes reemployed within 12 months of receiving an early service retirement allowance or an early vested allowance computed under § 23–402 of this subtitle.

\*    \*    \*

(e) *Creditable service or eligibility service not allowed.*—An individual who is receiving a service retirement allowance or a vested allowance and who is reemployed by a participating employer may not receive creditable service or eligibility service during the period of reemployment.

consideration by that court, this Court granted certiorari. *Carven v. State Retirement & Pension Sys.*, 409 Md. 46, 972 A.2d 861 (2009). The parties present three questions for our consideration; however, because Mrs. Carven and the SRPS seek review of a common issue, the issues before us are two: [9] (1) whether the Board properly determined that Mrs. Carven's petition for a hearing was time barred because she failed to file her petition within 180 days of the Agency's May 2004 letter notifying Commissioner Carven that he was ineligible for JRS membership and (2) whether the Board properly determined that under SPP § 23–407(e) Commissioner Carven was ineligible for JRS membership based on his status as an EPS retiree.

We hold that the Board properly determined that Mrs. Carven's petition for a hearing was time barred under CO-MAR 22.0.04.06B. Consequently, we shall not reach the merits of the Board's decision denying Commissioner Carven's JRS membership eligibility based on his status as an EPS retiree.

## II.

We have mentioned that COMAR 22.03.04.06B provides that "[a] petition for a hearing shall be filed within 180 days of the date that a claimant is given notice of an Agency action pursuant to State Government Article, § 10–207[.]" [10] To

---

9. Mrs. Carven presents the following question: "Did the trial court err in holding that the provisions of section 23–407 were applicable to [Commissioner] Carven's appointment to the Workers['] Compensation Commission and would bar his membership in the Judges' Retirement System?"

The SRPS presents the following questions:

1. Did the Board of Trustees correctly conclude that Carven was prohibited from participating in the Judges' Retirement System because of the reemployment restrictions that governed his retirement from the Employees' Pension System?

2. Did the Board of Trustees correctly determine that Claimant's petition for an administrative hearing was untimely where the petition was filed well beyond the 180 day time period provided in the applicable regulation?

10. SG § 10–207, entitled "Notice of agency action," provides, in relevant part:

determine whether Mrs. Carven's petition for a hearing was time barred under COMAR 22.03.04.06B we must consider under what circumstances an individual qualifies as a "claimant" who has received "notice of an Agency action" as contemplated by that regulation.

The SRPS argues that Mrs. Carven's petition for a hearing was untimely because the Agency's May 2004 letter constituted notice of its administrative action, which triggered the 180–day time limitation established by COMAR 22.03.04.06B. The SRPS asserts that the letter conformed to SG § 10–207(b), which prescribes the contents of a notice of agency action. Consequently, to request a hearing on that action, Commissioner Carven was obligated to conform to the time limitation indicated in the letter. The SRPS contests the Circuit Court's determination that Commissioner Carven was not a "claimant" when he received the May 2004 letter because he had not filed a formal membership application. The SRPS contends that Commissioner Carven was a "claimant" because JRS membership is mandatory. In support, the SRPS cites SPP § 27–201, which provides that WCC commissioners are members of the JRS, and construes that provision to mean that membership is not contingent on submission of a membership application.

---

(a) *In general.*—An agency shall give reasonable notice of the agency's action.

(b) *Contents of notice.*—The notice shall:

(1) state concisely and simply:

(i) the facts that are asserted; or

(ii) if the facts cannot be stated in detail when the notice is given, the issues that are involved;

(2) state the pertinent statutory and regulatory sections under which the agency is taking its action;

\*     \*     \*

(4) unless a hearing is automatically scheduled, state that the recipient of notice of an agency's action may have an opportunity to request a hearing, including:

(i) what, if anything, a person must do to receive a hearing; and

(ii) all relevant time requirements; and

(5) state the direct consequences, sanction, potential penalty, if any, or remedy of the recipient's failure to exercise in a timely manner the opportunity for a hearing or to appear for a scheduled hearing.

The SRPS submits, instead, that the membership application described in the JRS handbook is merely a tool that the SRPS uses "to obtain (1) basic personal information needed to establish a retirement account, (2) proof of birth, and (3) a beneficiary designation."

The SRPS further argues that the JRS benefits handbook merely "provides a summary of the features and benefits of [the] retirement plan" and, "[i]f there are any questions of interpretation, the provisions of the State Personnel and Pensions Article will control to resolve them." The SRPS asserts that, under the applicable statutory provisions, employee and employer contributions are not contingent on submission of a completed membership application and, instead, commence automatically upon an individual's employment in a JRS-eligible position. The SRPS further contends that its statutory mandate does not grant the SRPS the authority to condition membership upon completion of a membership application.

In response, Mrs. Carven argues that she timely petitioned for a hearing because her husband was not a "claimant" until he submitted a written application for JRS membership in 2006 and she filed a petition for a hearing within 180 days of receiving the Agency's notice denying the written application. Mrs. Carven relies on COMAR 22.03.04.02B(2), which defines a "claimant" as "a participant or a participating employer that has filed a request for a hearing." Mrs. Carven asserts that Commissioner Carven's initial efforts to enroll in the JRS, consisting of an "informal discussion" with an SRPS employee and the May 6, 2004 letter to the Board chairman requesting "assistance" and an "opportunity to informally meet with the Department," did not satisfy the JRS formal membership application requirements and, thus, Commissioner Carven was not a "participant" as contemplated by COMAR when he received the May 2004 letter. Mrs. Carven further argues that, because Commissioner Carven was not a "participant," he was not a "claimant" as defined in COMAR 22.03.04.02B(2). In that regard, Mrs. Carven contends that, despite the letter's indication otherwise, Commissioner Carven had no right to

request a hearing at the time because he had not yet "satisfied the procedural requirements necessary" for JRS membership.

Alternatively, Mrs. Carven argues that, because under CO-MAR 22.03.04.02B(2) a "claimant" must have filed a request for a hearing and COMAR 22.03.04.02B(5) defines a hearing as "a contested case hearing" as defined under SG § 10–202, Commissioner Carven was not subject to the time limitation unless he requested a hearing related to a "contested case" as defined by statute. SG § 10–202(d) defines a contested case as "a proceeding before an agency to determine: (i) a right, duty, statutory entitlement, or privilege of a person that is required . . . to be determined only after an opportunity for an agency hearing[.]" Because Commissioner Carven had not formally applied for JRS membership when he received the Agency's May 2004 letter, Mrs. Carven contends that Commissioner Carven had no " 'right,' 'statutory entitlement,' or 'privilege' " that could be determined by an agency proceeding at that time and, thus, the 180–day time limitation was inapplicable.

### III.

An agency decision based on regulatory and statutory interpretation is a conclusion of law. *See Adventist Health Care, Inc. v. Md. Health Care Comm'n,* 392 Md. 103, 121, 896 A.2d 320, 331 (2006). "[E]ven when reviewing an agency's legal conclusions, an appellate court must respect the agency's expertise in its field." *Crofton Convalescent Ctr. v. Dep't of Health & Mental Hygiene,* 413 Md. 201, 215, 991 A.2d 1257, 1265 (2010). When an agency interprets its own regulations or the statute the agency was created to administer, we are especially mindful of that agency's expertise in its field. *See Adventist Health Care,* 392 Md. at 119, 896 A.2d at 330 ("Administrative agencies possess an 'expertise' and, thus, have a greater ability to evaluate and determine the matters and issues that regularly arise, or can be expected to be presented, in the field in which they operate or in connection with the statute that they administer."); *Md. Aviation Admin. v. Noland,* 386 Md. 556, 573 n. 3, 873 A.2d 1145, 1155 n. 3

(2005) ("[An] agency's interpretations and applications of statutory or regulatory provisions which the agency administers should ordinarily be given considerable weight by reviewing courts." (internal quotation marks and citations omitted)). "Despite [this] deference, it is always within our prerogative to determine whether an agency's conclusions of law are correct." *Crofton Convalescent,* 413 Md. at 215, 991 A.2d at 1265 (internal quotation marks and citations omitted).

█ Keeping in mind the deference owed to administrative decisions, we shall conduct an independent review of the regulations and statutory provisions upon which the Board rests its decision to determine whether the Board's decision is " 'plainly erroneous or inconsistent with the regulation.' " *Id.,* 991 A.2d at 1265 (quoting *Md. Transp. Auth. v. King,* 369 Md. 274, 288–89, 799 A.2d 1246, 1254 (2002)); *see also Noland,* 386 Md. at 574 n. 3, 873 A.2d at 1156 n. 3 ("[A] reviewing court must determine if the administrative decision is premised upon an erroneous conclusion of law." (internal quotation marks and citations omitted)).

█ "[T]he interpretation of an agency rule is governed by the same principles that govern the interpretation of a Statute." *Miller v. Comptroller of Md.,* 398 Md. 272, 282, 920 A.2d 467, 473 (2007) (internal quotation marks and citations omitted). The rules of statutory interpretation in Maryland are well-settled.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Kushell* [*v. Dep't of Natural Resources,* 385 Md. 563, 576, 870 A.2d 186, 193 (2005) ] (citing *Collins v. State,* 383 Md. 684, 688, 861 A.2d 727, 730 (2004)). "Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Adventist Health Care,* 392 Md. at 124 n. 13, 896 A.2d at 333 n. 13 (internal quotation marks and citations omitted). When a statute's plain language is unambiguous, we need only to apply the statute as written,

and our efforts to ascertain the legislature's intent end there.

*Crofton Convalescent,* 413 Md. at 216, 991 A.2d at 1266.

Moreover, "[a] plain reading of the statute assumes none of its language is superfluous or nugatory." *Newell v. Runnels,* 407 Md. 578, 640, 967 A.2d 729, 766 (2009) (quoting *Bost v. State,* 406 Md. 341, 350, 958 A.2d 356, 361 (2008)). To interpret an unambiguous statute or regulation, we must read the words as they appear. "We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Newell,* 407 Md. at 640–41, 967 A.2d at 766 (quotation marks and citation omitted). "If the meaning of the plain language is ambiguous or unclear," however, "to discern legislative intent, we look to the legislative history, prior case law, the purposes upon which the statutory framework was based, and the statute as a whole." *Id.* at 641, 967 A.2d. at 766 (quotation marks and citation omitted).

As stated above, COMAR 22.03.04.06B provides that "[a] petition for hearing shall be filed within 180 days of the date that a claimant is given notice of an Agency action[.]" The regulation appears in COMAR Title 22 "State Retirement and Pension System," Subtitle 3 "Board of Trustees," Chapter 4 "Procedures for Hearings by or for the Board of Trustees." COMAR 22.03.04.02B(2) defines "claimant" as "a participant or a participating employer that *has filed a request* for a hearing." (Emphasis added).

The SRPS correctly points out, however, that within that same chapter, the regulations refer to a "claimant" as someone who *may* request a hearing but has not yet done so. For example, COMAR 22.03.04.06B provides that a "claimant" shall file a petition for a hearing within 180 days of receiving "notice of an Agency action." In that context, the "claimant" has yet to file for a hearing, but the regulation refers to the aggrieved party as a "claimant." Likewise, COMAR

22.03.04.07A provides that, "[i]n a contested case, a claimant may request a hearing by submitting a petition for a hearing . . . within the time limitations specified in Regulation .06B of this chapter." Again, "claimant" refers to an aggrieved party who has yet to request a hearing.

To limit the definition of "claimant" as it appears in these regulations to a participant or participating employer who has filed a request for a hearing would yield a nonsensical result. COMAR 22.03.04.07A essentially would authorize a participant who already has filed a request for a hearing to "request a hearing by submitting a petition for a hearing[.]" This Court has often stated that, "[i]n construing a statute, we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Md.–Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 182, 909 A.2d 694, 700 (2006) (internal quotation marks and citations omitted); *see also Miller*, 398 Md. at 283, 920 A.2d at 473 (explaining that courts must afford statutory language the "most reasonable interpretation, in accord with logic and common sense, and . . . avoid a construction not otherwise evident by the words actually used" (internal quotation marks and citation omitted)). Thus, we do not construe COMAR 22.03.04.06B to apply only to participants or participating employers who have filed a request for a hearing. We retain and apply to COMAR 22.03.04.06B, however, the portion of the COMAR definition of "claimant" establishing that the right to a Board hearing must be asserted by a "participant" or "participating employer." *See* COMAR 22.03.04.02B(2) (defining "claimant" as "a participant or a participating employer that has filed a request for a hearing"); *State v. Ghajari*, 346 Md. 101, 115, 695 A.2d 143, 149 (1997) ("[W]hen two statutes appear to apply to the same situation, this Court will attempt to give effect to both statutes to the extent that they are reconcilable.").

Because a term must be construed in light of the context in which it is used, our efforts to ascertain the plain meaning of "claimant" as used in COMAR 22.03.04.06B are not

concluded by merely inserting "participant" or "participating employer" where COMAR 22.03.04.06B, the time limitation regulation, refers to a "claimant." When construing statutory language, we consider the relevant provisions "within the context of the statutory scheme as a whole." *Crofton Convalescent,* 413 Md. at 217, 991 A.2d at 1266; *see also Anderson,* 395 Md. at 183, 909 A.2d at 700 ("[B]ecause it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered." (quotation marks and citation omitted)). Thus, to interpret "claimant" as it appears in COMAR 22.03.04.06B we refer to the other regulations within that chapter and related statutory provisions.

As a point of reference, it bears repeating the relevant regulation: "A petition for hearing shall be filed within 180 days of the date that a claimant is given notice of an Agency action[.]" COMAR 22.03.04.06B. As stated above, the Board has defined the term "hearing" as "a contested case hearing as defined by the Administrative Procedure Act, State Government Article, Title 10, Subtitle 2, Annotated Code of Maryland [ ("APA") ]." COMAR 22.03.04.02B(5). Under the APA, a contested case "means a proceeding before an agency to determine ... a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing[.]" SG § 10–202(d). Accordingly, we construe "claimant" as it appears in COMAR 22.03.04.06B to apply to a "participant" or "participating employer," who, upon receiving notice of an Agency action, has a statutory, regulatory, or constitutional right to "a proceeding before an agency to determine ... a right, duty, statutory entitlement, or privilege." SG § 10–202(d); *see also Sugarloaf Citizens Ass'n v. N.E. Md. Waste Disposal Auth.,* 323 Md. 641, 652, 594 A.2d 1115, 1120 (1991) ("It is well established ... that the APA itself does not grant a right to a hearing. That right must come from another source such as a statute, a regulation, or due process principles.").

■ We now must decide whether Mrs. Carven's petition for a hearing was time barred under COMAR 22.03.04.06B as we have just construed it. For the purposes of COMAR 22.03.04.06B, Commissioner Carven was a "participant" when he received the Agency's May 2004 letter informing him that he was ineligible for JRS enrollment. SPP § 20–101(cc) defines "participant" as "a beneficiary, designated beneficiary, former member, member, or retiree who is or may become eligible to receive a benefit of any type from the several systems." Even assuming *arguendo* that Commissioner Carven was not a "member" when he received the letter, he was a retiree who "may [have] become eligible to receive a benefit of *any type* from the several systems." *Id.* (emphasis added).

■ Although we have determined that Commissioner Carven was a "participant" when he received the letter, we still must address whether at that time he had a right to "a proceeding before an agency to determine ... a right, duty, statutory entitlement, or privilege...." *See* SG § 10–202(d). The Circuit Court found, and Mrs. Carven agrees, that Commissioner Carven could not have petitioned for a "contested case" hearing at that time because he was not a member and therefore had no "right, duty, statutory entitlement, or privilege" to be determined in a hearing before the Board. We disagree.

■ In the case *sub judice*, Commissioner Carven's membership in the JRS was a mandatory condition of employment that commenced when he began his post as a commissioner. *See* SPP § 27–201 (providing that "a member of the [WCC]" is a member of the JRS); *see also* JRS Benefits Handbook ("Your membership in the Judges' Retirement System is mandatory."). COMAR enrollment regulations distinguish enrollment, which is contingent on the submission of an application, from membership. *See* COMAR 22.01.12.01, 22.01.12.02 (requiring participating employers to enroll employees who are members "of the State System as a condition of employment within 30 days from the first day of employment" and establishing that enrollment consists of submitting, in part, an

application for membership); *see also* COMAR 22.01.12.03 (imposing penalties on participating employers who do not timely enroll members of the "State system as a condition of employment"). As such, Commissioner Carven had a statutory entitlement to JRS membership as soon as he began serving as a commissioner.

Given that Commissioner Carven had such an entitlement at the time he received the Agency's May 2004 letter, we now consider whether the dispute related to that entitlement rose to the level of a "contested case." "[I]t is the nature of the dispute, rather than the stage of the proceedings, that determines whether or not a matter is a contested case." *Modular Closet Sys., Inc. v. Comptroller of the Treasury*, 315 Md. 438, 444, 554 A.2d 1221, 1223 (1989). Specifically, a contested case exists when "the nature of the dispute entitles the parties to a hearing to determine their rights and duties." *Id.* at 445, 554 A.2d at 1224. A party's entitlement to a hearing depends on whether the acting agency's decision was sufficiently final and immediately affected the party's rights or property. *See id.* at 442–44, 447–48, 554 A.2d at 1223–24, 1225 (noting that after an agency completes its informal inquiry, if any, and issues a decision that entitles the affected individual to an eventual hearing, the dispute may become a "contested case"); *Albert v. Public Service Comm'n*, 209 Md. 27, 37–38, 120 A.2d 346, 350–51 (1956) (explaining that when an agency directly applies policy or discretion to a specific individual, and "its acts are particular and immediate . . ., the person whose rights or property may be affected by the action is entitled to notice and [a] hearing" (internal quotation marks and citations omitted)). Again, whether Commissioner Carven submitted a membership application is not determinative of whether he had a right to a hearing. Instead, we consider whether the Agency's letter communicated a final decision of the matter and whether that decision immediately affected Commissioner Carven's entitlement. Even though he had not filed an application, the Agency nevertheless decided the matter conclusively. The SRPS informed Commissioner Carven twice—once orally and once in

writing—that he was ineligible for membership and based its decision on grounds unrelated to Commissioner Carven's failure to file a membership application or any information that would be contained therein.

Moreover, nothing in the record indicates that the decision was preliminary or establishes a basis upon which Commissioner Carven could have reasonably believed the decision was preliminary or pending the submission of his membership application. The letter expressly stated that, "as a retiree of the EPS, you are prohibited from earning any service credit in the JRS for your current service as a Commissioner" and referred to the Agency's decision as "the result" of the dispute. The letter also clearly stated that the director trusted that he had "fully explained why [Commissioner Carven] [was] not eligible to accrue any service credit in the Judges' Retirement System" and immediately thereafter informed Commissioner Carven of his right to appeal "this action." Additionally, and most importantly, the letter conformed to the APA's notice requirements by stating the issues involved, listing the statutory sections upon which the decision was based, and, as mentioned, advising Commissioner Carven of his opportunity to request an administrative appeal. *See* SG § 10–207(b).

These same facts undermine Mrs. Carven's contention that the "informal" nature of Commissioner Carven's efforts prior to receiving the May 2004 letter rendered the Agency's decision preliminary or something less than an "Agency action." The Agency's letter, in no uncertain terms, informed Commissioner Carven of the decision and just as clearly apprized him of his right to appeal "the action." Hence, regardless of Commissioner Carven's intent or belief about the informal nature of his inquiry prior to receiving that letter, he could not reasonably have believed after receiving the letter that the Agency's decision was merely advisory or preliminary, pending additional action on his part.

As to the immediacy of the impact of the Agency's decision, we agree with the Board's determination that the impact was sufficient to entitle Commissioner Carven to a hearing. The

decision precluded him from earning service credit while serving on the WCC and prevented the WCC from collecting member contributions for his future benefit. Given that Commissioner Carven was serving on the commission when he received the letter, and that his JRS membership had been denied orally even before receiving the letter, the effect could not have been more immediate.

For these reasons, we agree with the Board that, when Commissioner Carven received the Agency's May 2004 letter informing him that he was ineligible for JRS membership, the "nature of the dispute" was such that Commissioner Carven's entitlement had been denied finally, effective immediately, thereby granting Commissioner Carven a right to appeal that decision by petitioning for a "contested case" hearing. *See* SG § 10–207(a), (b)(4) (requiring an agency to "give reasonable notice" of an agency action and to inform the recipient that he or she "may have an opportunity to request a hearing"); COMAR 22.03.04.07 (establishing procedures through which a "claimant" in a contested case may request a hearing); *State Retirement & Pension Sys. v. Thompson,* 368 Md. 53, 63–64, 792 A.2d 277, 283–84 (2002) (noting that the SRPS is required to give notice of its actions and afford an opportunity for a hearing).

In turn, we hold that, because Commissioner Carven was a "participant" who possessed a statutory entitlement when he received the Agency's May 2004 letter and the nature of the dispute at that time was such that he was entitled to a hearing, Commissioner Carven was a "claimant" for the purposes of the time limitation set forth in COMAR 22.03.04.06B. We further hold that, because, as stated above, the Agency's letter conformed to the APA notice requirements, that letter constituted notice of an Agency action as contemplated by COMAR 22.03.04.06B, and the 180–day time limitation ran as of the date of that letter. Accordingly, we shall affirm the Board's denial of Mrs. Carven's petition for an administrative hearing on the ground that her petition was time barred under COMAR 22.03.04.06B.

## IV.

For the foregoing reasons, we reverse the judgment of the Circuit Court on the ground that the Board properly determined that Mrs. Carven's petition for a hearing was time barred under COMAR 22.03.04.06B. We therefore remand the case to that court with directions to dismiss the action.

**JUDGMENT OF THE CIRCUIT COURT REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE ACTION; COSTS TO BE PAID BY APPELLANT/CROSS–APPELLEE.**

BELL, C.J., HARRELL and MURPHY, JJ., Dissent.

MURPHY, J., dissenting.

I dissent from the holding "that the Board properly determined that [Mrs.] Carven's petition for a hearing was time barred under COMAR 22.0.04.06B." The Circuit Court's "MEMORANDUM OPINION AND ORDER" includes the following analysis of the Board's "time barred" argument:

On January 12, 2007, Elizabeth Carven filed a Petition for Hearing to the Board of Trustees on the issue of [her] eligibility for benefits under JRS. In response, SRPS Executive Director, R. Dean Kenderline, advised Petitioner that he would recommend that the Board of Trustees issue a summary decision and deny the requested relief. *Id.* at 1. In his letter, Kenderline explained that he believed the petition was untimely because it was not submitted within one hundred eighty (180) days of the May 24, 2004 letter from SRPS [to Commissioner Carven, her deceased husband].

In support of his finding that the petition was untimely, Kenderline cited COMAR 22.03.04.06[ (B) ]:

(B) Time Limitations. A petition for a hearing shall be filed within 180 days of the date that a claimant is given notice of an agency action pursuant to State Government Article, Section 10–207, Annotated Code of Maryland.

"Claimant" is defined as a participant "who has filed a request for hearing." "Hearing" is defined as "a contested case hearing. . . ." A "contested case" is defined as:

> . . . a proceeding before an agency to determine: (I) a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing
> . . .

The various actions taken by [Commissioner] Carven to resolve the eligibility issue before he submitted his application for JRS membership were preliminary and informal. As a result, the one hundred eighty (180) day time period did not begin to run from the date of the May 6, 2004 letter as Respondent contends.

Since [Commissioner] Carven did not apply for a membership in JRS until June 17, 2006, he was not a "claimant" within the meaning of the aforementioned regulation. As a result, [he] had no "right, duty, statutory entitlement, or privilege" to challenge his denial of JRS membership until after the September 7, 2006 "rejection" letter. Thus, Kenderline and the Board erred in concluding that [Mrs.] Carven's request for hearing was time barred. [Mrs.] Carven was not subject to the one hundred eighty (180) day time limitation as of the May 24, 2004 letter from SRPS providing notice of Agency action.

(Footnotes omitted).

I agree with that analysis. Because the ambiguous CO-MAR regulation at issue applies to a remedial statute, the regulation should be liberally construed in favor of the claimant. In my opinion, if the Board actually thought that the Executive Director's May 24, 2004 response was providing Commissioner Carven with "notice of Agency action," that correspondence should have expressly advised him about both his right to petition for a hearing and the time limitation on that right.[1] Moreover, I have no doubt whatsoever that if

---

1. Because of the understandable confusion over the issue of whether a particular letter written by a bureaucrat does or does not constitute a

Commissioner Carven had filed a petition for hearing as soon as he received the Executive Director's May 24, 2004 response, the Board would have denied the petition as "premature." I would therefore hold that there is no merit in the argument that Mrs. Carven's Petition was filed too late.

In addition to rejecting the Board's "time barred" argument, this Court should proceed to apply the *current* version of SPP § 23–408 to the merits of Mrs. Carven's claim.

> Maryland consistently has followed the rule that "an appellate court is bound to decide a case according to existing laws, even though a judgment rightful when rendered by the court below should be reversed as a consequence," as Judge Markell, for the Court, repeated in *Woman's Club v. State Tax Comm.*, 195 Md. 16, 19 [, 72 A.2d 742, 743 (1950) ] (or, it may be noted, even when a judgment wrong when rendered is made right by the change in the law). See also for this proposition that a change in the law after a decision below and before final decision by the appellate Court will be applied by that Court unless vested or accrued substantive rights would be disturbed or unless the legislature shows a contrary intent, *Keller v. State,* 12 Md. 322 [ (1858) ]; *Day v. Day,* 22 Md. 530 [ (1865) ]; *Gordy v. Prince,* 175 Md. 688 [, 7 A.2d 611 (1939) ]; *Cockerham v. Children's [Aid ] Society,* 185 Md. 97 [, 43 A.2d 197 (1945) ]; and *Tudor Arms Apts. v. Shaffer,* 191 Md. 342 [, 62 A.2d 346 (1948) ].

*Yorkdale v. Powell,* 237 Md. 121, 124, 205 A.2d 269, 270 (1964).

Rather than remand this case to the Circuit Court "with directions to dismiss the action," this Court should reverse the judgment of the Circuit Court, and remand with directions that the Circuit Court reverse the decision of the Board and

---

"notice of agency action," *"there oughta be a law "* requiring that, when an agency provides what it considers to be a "notice of action" to a person who is required to challenge the agency's action within a limited period of time, the notice must expressly advise the recipient of any time limitation on the recipient's right to challenge the action.

remand Mrs. Carven's claim to the Board for a computation of the benefits to which she is entitled.[2]

Chief Judge BELL and Judge HARRELL have authorized me to state that they join this dissenting opinion.

---

2. The Board would have no difficulty in calculating the amount of money that it *should* have collected from Commissioner Carven during his service on the Workers Compensation Commission, and deducting that amount from the benefits to which Mrs. Carven is entitled under the current law.