59 A.3d 990

EMPLOYEES' RETIREMENT SYSTEM
OF the CITY OF BALTIMORE

v.

Sylvester DORSEY.

No. 29, Sept. Term, 2012.

Court of Appeals of Maryland.

Jan. 23, 2013.

William R. Phelan, Jr., Chief Solicitor, and Herbert Burgunder, Jr., Special Principal Counsel (George A. Nilson, City Solicitor, Baltimore City Department of Law, Baltimore, MD), on brief, for petitioner.

Mitchel M. Gordon, Chartered, Baltimore, MD, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BARBERA, J.

Baltimore City Code (2012), Article 22, § 9(j)[1] lays out the eligibility requirements for certain employees of the City of Baltimore to receive line-of-duty disability retirement benefits.[2] That section requires a claimant seeking such benefits to prove that he or she sustained at least a "50% anatomical loss of the use of any 1 or at least a 25% or more anatomical loss of each of 2 or more" enumerated body parts. § 9(j)(5)(ii), (iii). The loss of use must be

---

**1.** All statutory references herein are to Baltimore City Code (2012), Article 22, unless otherwise indicated.

**2.** In particular, § 9 pertains to Class C members of the Employees' Retirement System of the City of Baltimore. An employee who began (or begins) employment on or after July 1, 1979, becomes a Class C member upon completing 12 consecutive months of employment. § 9(a)(1). Article 22 lays out a separate retirement system for the City's fire and police department employees, *see* § 29 *et seq.*, and yet another system for elected officials, *see* § 17A *et seq.*

the direct result of **bodily injury through an accident independent of all other causes and independent of any preexisting physical or medical conditions,** job-related or otherwise, occurring while in the actual performance of duty with the City at a definite time and place, without willful negligence on the part of the member.

§ 9(j)(1)(ii)(emphasis added).

Respondent, Sylvester Dorsey, was injured while performing his job as a school police officer in Baltimore City. Following the City's termination of his employment, Respondent applied for line-of-duty disability retirement with Petitioner, the Employees' Retirement System ("ERS") of the City of Baltimore. A hearing examiner found that Respondent had a 25% impairment to his right arm and a 25% impairment to his back as a result of the work injury, and an additional 15% impairment to his back due to degenerative disc disease that was asymptomatic prior to the injury but became symptomatic following the injury. The hearing examiner denied the application for line-of-duty disability retirement. The hearing examiner concluded that Respondent did not satisfy the statutory requirements because "the impairment to [Respondent's] back is not independent of all other causes." The hearing examiner reasoned that Respondent's degenerative disc disease "contribute[d]" to the disability of his back.

Respondent sought judicial review of the hearing examiner's decision, and the Circuit Court for Baltimore City reversed in Respondent's favor. The Court of Special Appeals affirmed the judgment of the Circuit Court. *Employees' Ret. Sys. v. Dorsey,* 203 Md.App. 304, 37 A.3d 1064 (2012). We granted the petition of the ERS to determine whether Respondent's preexisting condition precludes him from qualifying for line-of-duty disability retirement on the grounds that his impairment is not entirely independent of any preexisting physical or medical conditions. For reasons we shall explain, Respondent's preexisting condition does not preclude him from qualifying for line-of-duty disability retirement because he proved

that 50% of his total level of disability [3] is the direct result of the injury he sustained while performing in the line of duty. We therefore affirm the judgment of the Court of Special Appeals.

## I.

Respondent began his employment with the City of Baltimore as a school police officer in August 2005. While on-duty on August 31, 2007, Respondent was involved in a violent altercation with a student's parent. During that incident, Respondent injured his lower back. A few weeks after that event Respondent returned to light work duty. He was unable, however, ever to return to full work duty.

On January 17, 2009, the City of Baltimore terminated Respondent's employment. Respondent subsequently filed an application for line-of-duty disability retirement. On July 12, 2010, a hearing examiner conducted a hearing on the claim, during which Respondent testified and numerous medical and other records were submitted into evidence.

Respondent testified that following the August 2007 incident he developed "a real sharp constant pain down the back of the right leg into the foot." Respondent described having "weakness in the leg" causing his knee to "buckle[ ] constantly." He also had difficulty walking up and down stairs. On one occasion, Respondent fell down the stairs after his legs "gave out." Respondent separated his right shoulder as the result of that fall. He testified that as the result of the shoulder injury he suffered pain and had difficulty lifting, pushing and pulling. He also experienced constant pain in his back.

Respondent's treatment records disclose that prior to the hearing five MRIs were taken of his back; he received a series of steroid injections; and a nerve conduction study and decompression surgery were performed. Respondent was

---

**3.** For ease of reference, we shall refer to this statutory threshold of at least a "25% or more anatomical loss of each of 2 or more of the [scheduled] impairments" as a 50% total disability level or impairment. We recognize that one need not prove a 50% disability of the "whole" person overall in order to qualify for line-of-duty disability benefits.

evaluated and/or treated by a number of physicians during the period between the August 31, 2007 incident and the July 2010 hearing on his claim for line-of-duty disability retirement. Several evaluating and treating physicians noted asymptomatic degenerative disc disease pre-dating the August 2007 injury. At least two of them opined about the degree to which that preexisting back condition affected Respondent's then-current level of disability. Dr. Jeffrey Gaber opined in April 2010 that Respondent had a 60% "anatomical loss to the lumbar spine, all due to the injury that occurred on August 31, 2007." Dr. Friedler noted in June 2010 that Respondent's back was 35% disabled, "of which 15% is preexisting."

Section 9(j) addresses the line-of-duty disability retirement benefit. That section requires the claimant to comply with the application process and filing deadline and further requires the hearing examiner to determine that the claimant is "permanently incapacitated for the further performance of the duties of his or her job classification in the employ of the City due to one or more of the impairments" listed in § 9(j)(5)(iii) (*e.g.*, "back" and "arm"). *See* § 9(j)(1)(i), (2). The claimant also must prove that he or she sustained "50% anatomical loss of the use of any 1 or at least a 25% or more anatomical loss of each of 2 or more" of the body parts listed in subsection 9(j)(5)(iii), *see* § 9(j)(5)(ii), "as the direct result of bodily injury through an accident independent of all other causes and independent of any preexisting physical or medical conditions, job-related or otherwise," *see* § 9(j)(1)(ii). *See also* § 9(p)(11)(iv) (providing that the hearing examiner shall determine "generally, whether the member's disability qualifies under § 9(j) of this article," and "specifically, whether the member's disability is, independent of any preexisting physical or medical condition, job-related or otherwise, the direct result of a bodily injury arising through an accident that occurred . . . while in the actual performance of duty at some definite time and place").[4] The claimant has the burden to prove by a

---

4. Section 9(p)(11) is entitled "Hearings—Examiner's determination." Subsection (p)(11)(iv) states in full that the hearing examiner shall determine:

preponderance of the evidence that he or she, among other things, "meets all of the eligibility requirements set by law for the applicable benefit." § 9(p)(10)(i).

The hearing examiner found that Respondent filed timely his application for line-of-duty disability retirement and proved by a preponderance of the evidence that "he is permanently incapacitated from performing the duties of his job classification." The hearing examiner further found that Respondent proved by a preponderance of the evidence that he had injured his back during the August 2007 assault, which occurred while he was performing his job duties in school.

The hearing examiner resolved the conflict among those physicians who had opined about the extent to which Respondent's preexisting degenerative disc disease affected his present disability, by finding that Respondent sustained a "40% disability to the back, with 15% of his impairment caused by the pre-existing condition and 25% due to the assault of 8/31/07." The hearing examiner also found that Respondent suffered a "25% impairment to his back and 25% impairment to his right arm due to the assault which occurred in the line of duty on 8/31/07."

The hearing examiner concluded nonetheless that Respondent was not entitled to the line-of-duty disability retirement benefit. The hearing examiner reasoned:

The statute does not say the Claimant must be free of any pre-existing condition, what the statute actually says is "the impairment" must be independent of any pre-existing physical or medical condition. The question is whether the pre-

---

(A) generally, whether the member's disability qualifies under § 9(j) of this article, and

(B) specifically, whether the member's disability is, independent of any preexisting physical or medical condition, job-related or otherwise, the direct result of a bodily injury arising through an accident that occurred:

  1. within 5 years of the date of the member's application;

  2. while in the actual performance of duty at some definite time and place; and

  3. without willful negligence on the member's part.

existing condition is contributory to the impairment. I conclude that the preponderance of the evidence is that the pre-existing lumbar degeneration does in fact contribute to the current impairment.

\*     \*     \*

[T]he impairment to Mr. Dorsey's back is not independent of all other causes. The evidence is clear that the pre-existing degenerative disc disease in his back contributes to Mr. Dorsey's disability and without it Mr. Dorsey would not be as disabled as he currently is.

Consequently, the hearing examiner denied Respondent's application for line-of-duty disability retirement on the ground that he "does not meet the statutory requirements set forth in the City Code."

Respondent filed in the Circuit Court for Baltimore City a petition for judicial review of the hearing examiner's decision. At the hearing on the petition, Respondent argued that the hearing officer had made an error of law by misconstruing § 9(j)(1)(ii). According to Respondent, that provision allows for preexisting conditions and requires only that the claimant prove, as the hearing officer found he had proved, that he suffered at least 50% total impairment (25% impairment of the back and 25% impairment of the right arm) as the direct result of a line-of-duty accident. Counsel for the ERS countered that the evidence supported the hearing officer's decision, which counsel characterized as a finding that "if [Respondent] didn't have that preexisting [condition] he wouldn't be disabled." The Circuit Court agreed with Respondent that the hearing officer had made an error of law in concluding that Respondent was not entitled to line-of-duty disability retirement, because the hearing officer's findings of "25 percent impairment to his back and 25 percent impairment to his shoulder" satisfy the eligibility requirements of § 9(j).

The ERS noted an appeal to the Court of Special Appeals, which affirmed in pertinent part the judgment of the Circuit

Court.[5] *Dorsey,* 203 Md.App. at 321, 37 A.3d 1064. The Court of Special Appeals held that the hearing examiner's decision was premised on an erroneous conclusion of law, specifically, a misreading of the ordinance:

> The hearing examiner in this case erred in finding that a claimant with a preexisting condition that contributes to an impairment in any way may not recover line-of-duty disability retirement benefits. Although the percentage of the impairment that is due to the preexisting condition does not count in calculating the percentage threshold required [under § 9(j)(1)(ii) ] to qualify for disability, a preexisting condition does not completely disqualify a claimant from the [line-of-duty] disability if he or she otherwise meets the statutory requirements.

*Id.* at 315, 317, 37 A.3d 1064.

The Court of Special Appeals noted the hearing examiner's findings that Respondent suffered a "25% impairment to the back and a 25% impairment to his arm due to the assault which occurred in the line of duty on 8/31/07." *Id.* at 318–19, 37 A.3d 1064. Based on that finding, the Court of Special Appeals held: "This portion of Mr. Dorsey's disability, which met the statutory requirements, was independent of his preexisting condition and satisfied the requirements of the statute. That there was some additional disability due to a preexisting condition did not preclude Mr. Dorsey from receiving [line-of-duty] disability benefits." *Id.* at 319, 37 A.3d 1064.

We granted the petition of the ERS for a writ of certiorari, *Employees' Ret. Sys. v. Dorsey,* 427 Md. 62, 46 A.3d 404 (2012), to answer the following questions:

---

**5.** The Court of Special Appeals vacated the portion of the Circuit Court's order in which that court "granted [Respondent's] 'application for line of duty disability retirement benefits,'" because the Circuit Court had exceeded its authority by ordering that relief. *Employees' Ret. Sys. v. Dorsey,* 203 Md.App. 304, 321, 37 A.3d 1064 (2012). The Court of Special Appeals "remand[ed] the case to the circuit court, to remand the case to the administrative agency to order, consistent with its factual findings, that [Respondent] is entitled to line-of-duty disability retirement benefits." *Id.*

1. Can the requirement in the City's retirement law that an employee's impairment must be "independent of any preexisting physical or medical condition, whether job-related or otherwise," be satisfied when the impairment is caused in part by a preexisting medical condition?

2. Did the lower court err in deciding that Mr. Dorsey was qualified for line-of-duty disability retirement, when his impairment was the result of an asymptomatic, preexisting medical condition that was made symptomatic by a work-related injury?

## II.

This case comes to us on judicial review of the decision of the ERS, an administrative agency of Baltimore City. The rules by which we undertake such review are well-known. Each reviewing court must "look through" the judgments of the preceding reviewing courts, and examine the agency's decision. The reviewing court's role is narrow, as "it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Maryland Aviation Admin. v. Noland,* 386 Md. 556, 571, 873 A.2d 1145 (2005) (quoting *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–69, 729 A.2d 376 (1999)) (internal quotation mark omitted). In applying the test for substantial °evidence, the reviewing court "decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Id.* (internal quotation mark omitted). The reviewing court defers to the agency's factual findings, if supported by the record. *Id.* The reviewing court, moreover, "must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence." *Id.* (alteration in original) (internal quotation mark omitted).

■ With respect to the agency's conclusions of law, a certain amount of deference may be afforded when the agency is interpreting or applying the statute the agency itself administers. *Dep't of Human Resources v. Hayward,* 426 Md. 638, 650, 45 A.3d 224 (2012) (quoting *Marzullo v. Kahl,* 366 Md. 158, 172, 783 A.2d 169 (2001)); *Dep't of Natural Resources v. Heller,* 391 Md. 148, 166, 892 A.2d 497 (2006). "We are under no constraint, however, 'to affirm an agency decision premised solely upon an erroneous conclusion of law.'" *Thomas v. State Ret. & Pension Sys.,* 420 Md. 45, 54–55, 21 A.3d 1042 (2011) (quoting *Ins. Comm'r v. Engelman,* 345 Md. 402, 411, 692 A.2d 474 (1997)); *see Marsheck v. Board of Trustees of the Fire & Police Employees' Ret. Sys.,* 358 Md. 393, 402, 749 A.2d 774 (2000). Section 9(p)(12)(iii) reflects these principles of judicial review, providing that "[t]he determination of the hearing examiner is presumptively correct and may not be disturbed on review unless it is arbitrary, illegal, capricious, or discriminatory." [6]

Neither party to the present case challenges the hearing examiner's finding concerning the percentage of Respondent's post-August 2007 disability directly attributable to the August 2007 injury—"25% impairment to his back and 25% impairment to his right arm." Nor do the parties dispute the hearing examiner's finding that Respondent suffered "40% disability to the back, with 15% of his impairment caused by the pre-existing condition and 25% due to the assault of 8/31/07." The parties also have no quarrel with the meaning (and application to the facts here) of the requirement describing the extent of disability required in order to qualify for the

---

**6.** We are also cognizant of the principle that deference may be appropriate when reviewing "a consistent and long-standing construction given a statute by an agency charged with administering it." *Stachowski v. Sysco Food Servs. of Baltimore, Inc.,* 402 Md. 506, 517, 937 A.2d 195 (2007)(citing *Marriott Employees Fed. Credit Union v. MVA,* 346 Md. 437, 445, 697 A.2d 455 (1997)). The ERS has not advanced the argument that the hearing examiner's interpretation of § 9(j)(1)(ii) in this case is consistent with the well-established practice of the agency for line-of-duty disability claims, and nothing in the record suggests such a practice.

benefit. *See* § 9(j)(5) ("For line-of-duty disability retirement benefits awarded on or after April 1, 2001, a 50% anatomical loss of the use of any 1 or a 25% or more anatomical loss of each of 2 or more of the impairments listed in subparagraph (iii)," which includes the back and the arm.).

The parties' disagreement focuses instead on the legal correctness of the hearing examiner's ultimate conclusion that Respondent had not proved the percentage of impairment necessary to show entitlement to line-of-duty disability retirement. Notwithstanding the phrasing of the questions the ERS presents for our review, it is clear that resolution of those questions requires us to determine whether the hearing officer's ultimate conclusion was based on an erroneous conclusion of law. In resolving that legal question, we owe the hearing examiner no deference.

At issue is the proper construction of § 9(j)(1)(ii), specifically the language requiring the claimant to prove that he or she sustained at least a 50% disability to one enumerated body part, or at least a 25% disability to each of two or more enumerated body parts, **"as the direct result of bodily injury through an accident independent of all other causes and independent of any preexisting physical or medical conditions."** (Emphasis added.) *See also* § 9(p)(11)(iv), *supra*. We must decide whether the requirement that the disability sustained in the line of duty be "independent" of any preexisting condition affects the calculation of the disability directly resulting from the claimant's line-of-duty injury. To resolve that purely legal question, we rely upon the rules of statutory interpretation.

The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.

*Gardner v. State,* 420 Md. 1, 8, 20 A.3d 801 (2011)(quoting *State v. Johnson,* 415 Md. 413, 421, 2 A.3d 368 (2010) (internal quotation marks and citations omitted)). "[W]here the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent." *Hayward,* 426 Md. at 650, 45 A.3d 224 (quoting *Montgomery Cnty. Dep't of Soc. Services v. L.D.,* 349 Md. 239, 264, 707 A.2d 1331 (1998)). Yet we "do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Gardner,* 420 Md. at 9, 20 A.3d 801 (quoting *Johnson,* 415 Md. at 421, 2 A.3d 368). By employing that analytical approach to statutory construction, "we seek to avoid illogical and unreasonable results that defy common sense." *Marsheck,* 358 Md. at 403, 749 A.2d 774.

We also bear in mind that the retirement system at issue here is remedial legislation and, as such, "must be construed liberally in favor of injured employees in order to effectuate the legislation's remedial purpose." *Id.* That we must give the legislation a liberal interpretation in favor of the injured employee, however, "does not grant us license to alter the statute beyond its clear meaning and the legislature's intent." *Id.* We therefore are enjoined never to "add provisions or tailor existing ones to change the mandatory nature of the statute's language in order to favor the disability claimant." *Id.*

The ERS argues that the hearing officer correctly decided that in order to qualify for line-of-duty disability retirement the claimant must establish that the impairment sustained (here to the back and arm) must be caused exclusively by the incident that occurred in August 2007. According to the ERS, "[a]ny causation by a preexisting condition will disqualify the applicant for line-of-duty disability retirement, although he or

she may still qualify for ordinary disability retirement." [7] This is so, argues the ERS, even when, as here, the claimant proves that the combined 50% disability to his arm and back is directly related to the line-of-duty injury, independent of his preexisting degenerative disc disease.

Respondent disagrees. He argues that the ordinance requires the claimant to prove at least a 50% loss of a single scheduled "impairment" or a 25% loss of each of two scheduled impairments, directly attributable to the line-of-duty injury, and it matters not that a level of disability above either minimum 50% threshold is owing to a preexisting disability.

We conclude by application of the rules of statutory construction that Respondent correctly interprets §§ 9(j)(1)(ii) and (p)(11)(iv). To repeat, §§ 9(j)(1)(ii) and (5)(ii), (iii) require the claimant to prove a line-of-duty "disability," meaning a minimum 50% anatomical loss of the use of any one or a minimum 25% loss of each of two or more of the "impairments" listed in the schedule (including, applicable here, the back and arm) "as the direct result of bodily injury **through [a line-of-duty] accident independent of all other causes and independent of any preexisting physical or medical conditions.**" (Emphasis added.) Likewise, as stated in § 9(p)(11)(iv), the hearing examiner, in order to find that the claimant has met that burden of proof, must determine specifically **"whether the [claimant's] disability is, independent of any preexisting physical or medical condition, ... the direct result of a bodily injury arising through an accident**

---

7. What the ERS refers to as "ordinary disability retirement," now described in § 9(i) as "non-line-of-duty disability retirement," does not require proof that the disability was the direct result of a line-of-duty accident. That form of disability retirement for a Class C member requires the hearing examiner to determine that "(A) the member is mentally or physically incapacitated for the further performance of the duties of her or his job classification in the employ of the City, and (B) the incapacity is likely to be permanent." § 9(i)(1)(ii). In the present case, Respondent presumably would not qualify for non-line-of-duty disability retirement because the hearing examiner explicitly found that Respondent did not have five years of membership service, as required by § 9(i)(1)(i).

that occurred" within the requisite time frame, while the claimant was acting in the line of duty and without willful negligence. (Emphasis added.)

In construing the emphasized language of these two subsections, we must assign the words at issue their ordinary meaning, while reading those words in the context of the entire legislative scheme and in a way that does not lead to a nonsensical construction. Read in this way, the language of subsections 9(j)(1)(ii) and (p)(11)(iv) plainly means the claimant must prove at least a 50% loss of a single scheduled "impairment," or a 25% loss of each of two scheduled impairments, is directly attributable to the line-of-duty injury, and no part of either version of the minimum 50% loss threshold can be attributable to an independent, preexisting condition. Further, those subsections, plainly read, do not bar an otherwise eligible claimant from receiving line-of-duty disability retirement simply because the claimant has a preexisting condition that inflates the disability to a higher percentage than the required threshold of 50% under either alternative.

To read the language as the ERS does would lead to a nonsensical result, one which we cannot assume the Baltimore City Council intended. A hypothetical scenario makes the point. Suppose two employees acting in the line of duty and without negligence sustain precisely the same shoulder injury in the same accident; both employees comply with all other pertinent requirements of § 9(j); and both are found by the hearing examiner to have suffered a 50% disability to their respective shoulders, in accordance with § 9(p)(11)(iv). One of those employees, however, is further found by the hearing examiner to have had a preexisting rotator cuff injury that elevates to 60% the disability to the injured shoulder. Under the reading that ERS would have us give to § 9(j)(1)(ii) and § 9(p)(11)(iv), only the employee without the preexisting condition would be entitled to line-of-duty disability retirement, notwithstanding that both employees suffered the same degree of disability directly attributable to the same line-of-duty accident. We cannot conceive of a common-sense legislative rationale to support the different outcomes, and the ERS

presents us with none. Nor can the ERS direct us to any legislative history suggesting the Baltimore City Council intended such varying outcomes.[8]

Furthermore, even if we were to accept the proposition that the pertinent language of § 9(j)(1)(ii) and its counterpart language in § 9(p)(11)(iv) is susceptible to two equally reasonable but contrary constructions—the construction given it by the ERS and the one given it by Respondent—the result would be the same. In that instance the remedial nature of the line-of-duty disability retirement scheme would necessitate our resolving the resulting ambiguity in favor of Respondent. *See Marsheck*, 358 Md. at 403, 749 A.2d 774 (observing that a retirement system is remedial legislation, and, as such, "must be construed liberally in favor of injured employees in order to effectuate the legislation's remedial purpose").

In the present case, the hearing examiner found that Respondent "has 25% impairment to his back and 25% impairment to his right arm due to the assault which occurred in the line of duty on 8/31/07." That factual finding satisfies the requirements for obtaining line-of-duty disability retirement under the statute. Couched in the language of 9(j)(1)(ii) and (5)(ii) and (iii), Respondent has a "25% . . . loss [of use] of each of 2 or more of the impairments listed in subparagraph (iii)," i.e., the back and shoulder/arm, "as the direct result of bodily injury through an accident independent of all other causes and independent of any preexisting physical or medical conditions." Likewise, couched in the language of § 9(p)(11)(iv), the hearing examiner specifically found that "[Respondent's]

---

**8.** The hypothetical example provided by Respondent and cited by the Court of Special Appeals in this case further proves the point:

Under [ERS]'s theory, if a police officer, who is over the age of fifty, has small degenerative changes in his back, but was otherwise fine, gets shot in the line-of-duty and is now walking with a cane and has a fifty-one percent impairment to his back with fifty percent being as a result of the shooting and one percent from living life and getting older, then he is not permitted to collect a line-of-duty disability retirement. That is neither what the statute says nor what the statute means.

*Employees' Ret. Sys. v. Dorsey*, 203 Md.App. at 317–18, 37 A.3d 1064.

disability is, independent of any preexisting physical or medical condition, ... the direct result of a bodily injury arising through [the] accident that occurred" on August 31, 2007.

That the hearing examiner continued beyond those findings to determine there was a 15% impairment to Respondent's back due to the preexisting degenerative disc disease was mere surplusage immaterial to the requirements of the ordinance. The preexisting condition, though rendering Respondent more disabled by the August 2007 incident than he otherwise would have been, plays no role in the required calculation of the degree of anatomical loss directly attributable to the bodily injury he incurred during that incident, which the hearing officer found to be at 25% to Respondent's back. That degree of incident-based impairment is, in the words of the ordinance itself, "independent of all other causes and independent of any preexisting physical or medical conditions." In light of the undisputed finding by the hearing examiner that Respondent sustained 25% impairment of his right arm attributable to the August 2007 incident, the ordinance merely requires that he have at least an additional 25% impairment of his back directly attributable to the accident, which the hearing examiner found Respondent did. The hearing examiner did not conclude that there was a "but for" link between the 25% incident-related disability to Respondent's back and the 15% attributable to his preexisting condition.

We find further support for our construction of Baltimore City's line-of-duty disability retirement scheme by resort to workers' compensation cases, which in the past we have found to be helpful. *See, e.g., Board of Trustees v. Grandinetti,* 269 Md. 733, 737–38, 309 A.2d 764 (1973); *Heaps v. Cobb,* 185 Md. 372, 383, 45 A.2d 73 (1945). Maryland's workers' compensation scheme addresses the circumstance involving an injured employee who has a preexisting condition that is aggravated by an accident occurring in the scope of employment. *See* Md.Code (1999, 2008 Repl.Vol.), § 9–656 of the Labor and Employment Article. In that context, a preexist-

ing condition that is worsened by an accidental injury does not automatically disqualify an employee from receiving workers' compensation benefits, provided there is some causal relationship between the compensable accident and the injury sustained. *See, e.g., Reeves Motor Co. v. Reeves,* 204 Md. 576, 582, 105 A.2d 236 (1954) ("If the accidental injury has accelerated or aggravated an existing disease or infirmity, the claimant is entitled to disability."); *Dickson Construction & Repair Co. v. Beasley,* 146 Md. 568, 575, 126 A. 907 (1924) ("[I]t has been established that, when disease or infection is so set in motion or aggravated by an injury that disabilities result which would not otherwise have occurred, such disabilities are to be treated as the results of the injury."). Although an employer may be entitled to apportionment based on the percentage of the disability attributable to the preexisting condition, the employer nonetheless remains liable for the portion of the disability "reasonably attributable solely to the [work-related] accidental personal injury or occupational disease." Md.Code (1999, 2008 Repl.Vol.), § 9–656(b) of the Labor and Employment Article; *see also* 1 Clifford B. Sobin, Maryland Workers' Compensation, § 5:2 (2012) (discussing aggravation of a preexisting condition under the Maryland workers' compensation scheme); Richard P. Gilbert & Robert L. Humphreys, Jr., Maryland Workers' Compensation Handbook, § 6.14 (3d ed.2007) (same).[9] The same result obtains here, given how we construe § 9(j)(1)(ii) and § 9(p)(11)(iv). The hearing examiner explicitly apportioned the percentage of Respondent's back disability attributable to the incident in

---

9. The Court of Special Appeals found instructive the following example:
   Consider Claimant A, who is diagnosed as having nascent diabetes myelitis. While performing an employment activity, A sustains a laceration to his left foot. Circulatory problems attributable to his diabetic condition complicate and prolong his recovery from the accident.... When it is time for a determination of A's permanent partial disability, however, **the Commission may apportion between the disability attributable to the injury and the disability attributable to the diabetes.**
   *Dorsey,* 203 Md.App. at 318, 37 A.3d 1064 (quoting Richard P. Gilbert & Robert L. Humphreys, Jr., Maryland Workers' Compensation Handbook, § 6.14 (3d ed.2007)).

August 2007(25%) and the percentage attributable to his preexisting degenerative disc disease (15%). That Respondent's back disability is caused in part by a preexisting condition does not disqualify him from line-of-duty disability retirement under § 9(j).

In conclusion, the hearing examiner found that 25% of Respondent's back impairment was caused by the accident, "independent of all other causes and independent of any preexisting physical or medical conditions." The portion of Respondent's back impairment attributable to the accident, combined with the 25% arm impairment attributable to the accident, meets the statutory criteria. The hearing examiner, having made those findings, committed a legal error in denying Respondent's application for line-of-duty disability retirement. The Court of Special Appeals came to the same conclusion. We therefore affirm the judgment of that Court.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONER.**