REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2266

September Term, 2014

_____

EMPLOYEES' RETIREMENT SYSTEM
OF BALTIMORE COUNTY

v.

BRANDT BRADFORD

_____

Nazarian
Reed,
Sharer, J. Frederick
    (Retired, Specially Assigned),

JJ.

_____

Opinion by Reed, J.

_____

Filed:  February 24, 2016

*Judge Dan Friedman and Judge
Christopher Kehoe did not participate,
pursuant to MD. Rule 8-605.1, in the
Court's decision to report this opinion.

The Employees' Retirement System of Baltimore County, Maryland ("ERS"), appellant, seeks to reverse the decision of the Baltimore County Board of Appeals (the "Board"), which found that ERS improperly denied Police Officer Brandt Bradford, appellee, the ability to choose a particular retirement option based upon the circumstances of his 2012 retirement from the Baltimore County Police Department ("BCPD"). ERS filed a Petition for Judicial Review in the Circuit Court for Baltimore County, which affirmed the Board's decision slightly over a year later. ERS noted timely appeal, and presents one question for our review, which we have rephrased:

> Did the circuit court err in affirming the Board's decision that the Baltimore County Code did not prevent Officer Bradford from changing his retirement option upon his second retirement from the BCPD?

For the reasons that follow, we answer in the negative, and affirm the decision of the circuit court.

## BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are not in dispute.

Officer Bradford joined the BCPD on December 16, 1974. On February 18, 1998, he retired from the force, with approximately 23.5 years of service with Baltimore County (the "County"). In addition to his service retirement allowance provided under the Baltimore County Code (the "Code"),[1] Officer Bradford was also entitled to select one of several "optional allowances," which provide for different means by which the service retirement allowance is paid to a retired employee's beneficiary after the retiree's death.

---

[1] Unless otherwise noted, all Code references are to the Balt. Co. Code, 2003.

1

*See* Code § 5-1-231.  Officer Bradford elected Option 4 under what was, at the time, § 23-61 of the Baltimore County Code, 1988 (now § 5-1-231 of the Baltimore County Code, 2003), which provided a fixed dollar amount to his wife in the event of his death.  Shortly thereafter, he began receiving his monthly retirement allowance, which was reduced by approximately $250.00 a month, the amount designated by Officer Bradford.

Less than 18 months later, Officer Bradford was rehired by the BCPD on December 1, 1999. The record reflects that Officer Bradford was rehired pursuant to "Special Rule No. 2.14," found in Code § 4-8-102 regarding "SPECIAL PERSONNEL RULES FOR POLICE AND FIRE DEPARTMENTS, which states:

> *Special Rule 2.14*. Former sworn employees.
>
> A.     Notwithstanding any other provision of these rules and subject to the conditions of this section, the Director of Human Resources, upon written recommendation from the Chief of Police, may hire former employees of the Police Department who previously have been separated from employment from any sworn position in the Department into the position of police office within twenty-four (24) months of the effective date of their separation from employment if:
>
> > 1.     The separation from employment is without prejudice; and
> > 2.     The employee has previously been certified as eligible for rehire.
>
> B.     The former sworn employee may be considered without further competition for the class of police officer, if a vacant position exists, subject to reasonable inquiries into the background and physical status of the employee between the time of separation from employment and application for rehire as may be deemed appropriate by the Chief of Police. The rehired employee's anniversary date shall be the date of rehire. Time away shall be considered as leave without pay for the purposes of calculating service and longevity credit. The rehired employee's sick leave balance at the time of resignation shall be restored unless it was used to determine the creditable service requirement, and other leave accruals shall be based on the adjusted

2

service time. Benefits may not be earned for the time away from county service.

Essentially, the effect of Special Rule 2.14 was to place Officer Bradford in the same position he was before he had retired.

Following his return, Officer Bradford worked an additional 13 years as a police officer, giving him a total of more than 35 years of County employment.

On June 12, 2012, Officer Bradford retired from the BCPD for the second time. Once again Officer Bradford submitted a retirement application, but this time selected Option 7 for his optional allowance; an option that was not available at the time of his 1998 retirement. Option 7 reads, in pertinent part:

> (7)    *Option 7*. Subject to subsection (d) of this section, an employee who has completed at least twenty-five (25) years of actual service as a sworn Baltimore County police officer . . . may retire with the option of having fifty (50) percent of the retired member's retirement allowance continued throughout the life of and paid to the original beneficiary upon the retired member's death. This option shall be provided at no cost to the employee.

Code § 5-1-213(a)(7). As Officer Bradford puts it in his brief: "In other words, while County employees who choose to designate a portion of their monthly pension benefit to their beneficiaries upon their death receive a *reduced* monthly pension benefit, for police officers with at least 25 years of service, the County Code provides that the designation by an officer to his or her beneficiary does not reduce the officer's monthly pension benefit." Sergeant Cole Weston, President of the Baltimore County Fraternal Order of Police Lodge No. 4 ("FOP"), testified before the Board that Option 7 was negotiated between the FOP and the County around 1999 in order to encourage police officers to extend their careers beyond the "normal twenty year service requirement."

3

Notwithstanding the fact that Officer Bradford met the eligibility requirements for Option 7 and had not begun to collect any retirement payments based on his June 2012 retirement, the Board of Trustees ("BOT") of ERS denied his request and instead required him to select Option 4, the election he made in 1998. According to the ERS, his request was denied pursuant to Code § 5-1-231(a), which reads, in pertinent part: "A member who has elected an optional benefit may not change such election after the first payment of the member's allowance becomes normally due, except as provided below." In short, because Officer Bradford had already retired and already received benefits under Option 4, the ERS believed that he was no longer allowed to change his selection.

On June 11, 2012, in response to a request from the administrator of the ERS for a legal opinion on whether Officer Bradford could change his optional allowance, the County Attorney issued an interoffice memorandum, opining that "the language of the statute is unambiguous" and "[a]s the statute clearly provides that the option may not be changed after 'first payment' and [Officer Bradford] received more than a first payment, it clearly provides that he may not change his option." On June 20, 2012, Officer Bradford appealed the decision to the Board.

An evidentiary hearing was held before the Board on April 4, 2013, and both sides were permitted to submit post-hearing briefs. Based on their review of the record, the Board reversed the decision of the ERS in a written opinion dated October 18, 2013, finding that § 5-1-231(a) was "not applicable" to the circumstances of Officer Bradford's 2012 retirement. Because the Board's reasoning is important under this case's standard of review (discussed *infra*), we set out the pertinent parts of their opinion at length:

4

[Officer Bradford] contends that his "rehire" in 1999 effectively rendered his retirement in 1998 a nullity. [Officer Bradford's] argument is based upon the provisions of Special Rule 2.14, supra. The argument is that upon his return to service [Officer Bradford] was no longer retired and therefore not covered by the benefits or restrictions of the retirement. While clearly [Officer Bradford] could no longer receive the monthly benefits of his retirement the question remains a[s] to whether he was forever barred from selecting a retirement option upon his second retirement which did not exist at the time of his first retirement. The County Code does not specifically address this situation.

In opposition to the foregoing the County Office of Law argues that a "plain reading" of Code section 5-[1-]231(a) establishes that a retiree's receipt of a retirement allowance forecloses any future benefit option selection. The Office of Law contends the Baltimore County [ERS] is an administrative agency and therefore deference should be given to the ERS with respect to its own regulations and orders. It is noteworthy that the retirement decision in this matter was made by the Baltimore County Board of Trustee[s] which was established pursuant to Article 3, Title 3, Subtitle 9 of the Baltimore County Code for the purpose of administering the Baltimore County Retirement System.

Irrespective of which of the two foregoing County entities is considered as an agency, the courts have recognized that that [sic] the expertise of an agency in its own field should be respected. *Salerian v. Md State Board of Physicians*, 176 Md. App. 231, (2007). However, agency decisions receive no special deference on questions of law, which we review de novo. *Talbot County v. Miles Point Property, LLC*, 415 Md. 372, 384 (2010).

The essential first inquiry in a matter of statutory interpretation is the plain meaning of the language of the statute.

Section 5-1-231 is silent as to effect of a rehire of a sworn police officer pursuant to Special Rule 2.14 (supra). Likewise Special Rule 2.14 is silent as to the intended effect of an employee's rehire upon past and future retirement option selection. A plain reading of Section 5-1-231 clearly bars a retiree from making certain option selections after the first receipt of retirement allowances absent a finding by this Board that the language of Section 5-1-231 creates an ambiguity as to the intended effect of the law as drafted by the Baltimore County Council.

In this case it appears that there is an ambiguity in the law. A rehired employee pursuant to Special Rule 2.14 is clearly no longer retired. As such, is an employee considered a retiree at all? The provisions of Special Rule 2.14(b) create a situation in which the period of retirement is specifically treated as "leave without pay for the purposes of calculating service and longevity credit." The net effect of the provision would appear to be that the

5

Appellant and other sworn officers similarly situated have an opportunity to change the nature and value of their retirement conditions based upon the continuation of their employment after the period of leave without pay.

The reasoning of the ERS as contained in the June 11, 2012 legal opinion from the County Office of Law is as follows as it concerns the effect of Special Rule 2.14 and the provisions 5-1-231 of the County Code:

"It may be argued that later enacted law should be read as affording Group 4 retires [*sic*] the right to change options. Courts also hold that statutes should not be read in a vacuum and that we should consider the larger statutory scheme when considering a statute that otherwise appears to be clear and unambiguous. (citations omitted)"

The Maryland Court of Appeals has made it clear that when a body is engaged in statutory interpretation, its goal is to effectuate the intent of the Legislature. *Mayor and Town of Oakland v. Mayor and Town Council of Mountain Lake Park*, 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006). Where, as in the instant case, a perceived ambiguity in the law exists, a reviewing court then turns its attention to other tools of statutory interpretation including: the construction of the statute, the relation of the statute to other laws in a legislative scheme; the legislative history and [t]he general purpose and intent of the statute. *Lewis v. State*, 348 Md. 648, 653 (1998).

The operative law before this Board is Special Rule 2.14. It was enacted after Section 5-1-231 of the Code. With the enactment of Special Rule 2.14 there was no accompanying language concerning the effect of a retired police officer returning to duty beyond those provisions above cited [*sic*]. It appears to this Board that the underlying "legislative scheme" was to encourage retired officers to return to duty in exchange for their reinstatement as sworn officers with their prior retirement being treated as leave without pay. Clearly if one has received monetary retirement benefits which are no longer considered retirement benefits it can be interpreted as the legislative body's intent to render the prior retirement a nullity. Based upon this reasoning the Board concludes that the provisions of 5-1-231 of the County Code are not applicable to the instant situation where a sworn police officer returns to active service with the Police Department pursuant to Special Rule 2.14.

ERS filed a timely petition for judicial review, and on December 12, 2014, a hearing was held in the Circuit Court for Baltimore County. That same day, after hearing arguments

6

from each side, the circuit court issued an order affirming the Board's decision, for the following reasons as stated on the record during the hearing:

> So, the facts in this case are that the employee, Officer Bradford retired in 1998. He was rehired by the county almost two years later, in 1999. In other words he was if you will un-retired. He was no longer retired. He was employed again. And the officer worked another thirteen years with the county. And during that time he was not receiving retirement benefits. In June of 2012 the employee retired again and in—the June, 2012 retirement was a new and distinct retirement event. He had been re-employed. Stopped retirement benefits. He was not retired. Was working and he retired a new, a second time, in June of 2012. Again, I believe this is a, a [*sic*] new retirement event. So, reading together Section 5-1-214(b) and Section 5-1-231 of the retirement allowance or the retirement options are made quote, "upon retirement by" by a quote, "a member" who may elect one of the seven options. Again, the member may make his or her election of an option under Section 5-1-231 at the time of his or her retirement. Officer Bradford was quote, "a member" at that time. He was not yet a retired member. And this was, June of 2012 was at the time of his retirement under, in fact and under the statute. In this case Officer Bradford's retirement date is June 30, 2012. At that time I'm told today [ERS's counsel] doesn't believe that Officer Bradford had received his first payment of retirement allowance with respect to his retirement in June of 2012. Therefore, the language of Section 5-1-231 regarding changing an election does not apply and does not bar his election of option 7.

On January 12, 2015, ERS noted a timely appeal.

## DISCUSSION

### A. Parties' Contentions

ERS's primary argument is that the circuit court erred in affirming the Board's decision to allow Mr. Bradford to change his retirement option, "when the plain and unambiguous language of County Code § 5-1-231 precludes such a change." In ERS's view, because § 5-1-231(a) explains that the only exceptions to the general prohibition are found in § 5-1-231(b) and (c), and neither of those subsections are applicable to Officer

7

Bradford, Officer Bradford should not be allowed to change his option now. ERS contends that Officer Bradford's reliance on Special Rule 2.14 is "misguided," because that rule is "a personnel rule in Article 4 of the Baltimore County Code and not a retirement system statute in Article 5 of the Baltimore County Code." ERS concludes by arguing that "[d]espite the considerable weight traditionally given in Maryland to an administrative agency's interpretation and application of the statute the agency administers, . . . the Board of Appeals explicitly gave no deference" to ERS, and that error was further compounded when the circuit court "gave only lip service to judicial deference as it went to extraordinary lengths to avoid the plain and unambiguous language of § 5-1-231."

Officer Bradford argues that the Board correctly ruled in his favor, because § 5-1-231 applies only to retirees, and at the time he opted for Option 7, he was an active employee with more than 30 years of sworn service. Officer Bradford contends that ERS's interpretation would "lead to absurd and harsh results and would render meaningless parts of the County Code," because to interpret § 5-1-231 to preclude Officer Bradford from changing his option now would invalidate the Code's "mandate" in Special Rule 2.14 that "a rehired employee's retirement is to be converted to a leave without pay status." Finally, Officer Bradford argues that ERS's argument that neither the Board nor the circuit court afforded sufficient deference to its interpretation of § 5-1-231 is mistaken, because (1) it is the Board's decision that is to be given deference, and (2) ERS's claim that it interpreted its own statute is "belied by the fact that the interpretation was not their own but instead performed by a third party, the Baltimore County Office of Law, who has no agency expertise in administering this statute."

8

## B. Standard of Review

It is well established that "[a] court's role in reviewing an administrative agency adjudicatory decision is narrow," and "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Maryland Aviation Administration v. Noland*, 386 Md. 556, 571 (2005) (quoting *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 67-69 (1999). It is equally well established that a "reviewing court must 'look through' the judgments of the preceding reviewing courts, and examine the agency's decision." *Employees' Retirement System of City of Baltimore v. Dorsey*, 430 Md. 100, 110 (2013). "With respect to the agency's conclusions of law, a certain amount of deference may be afforded when the agency is interpreting or applying the statute the agency itself administers." *Id*. at 111. "We are under no constraint, however, 'to affirm an agency decision premised solely upon an erroneous conclusion of law.'" *Id*. (quoting *Thomas v. State Ret. & Pension Sys.*, 420 Md. 45, 54–55 (2011)).

## C. Analysis

As an initial matter, we feel it is important to first point out that in this case, the conclusion of the "agency" for our review is that of the Board of Appeals, not ERS. *See, e.g.*, *Hill v. Baltimore County, Md.*, 86 Md. App. 642, 650-52 (1991) (discussing the role of the Baltimore County Board of Appeals as designated by the County Charter). While ERS understandably urges us to afford its interpretation a degree of deference of "considerable weight," we are unpersuaded. As this Court noted in *Hill*, "Sections 602 and

603 of the [Baltimore County] Charter provide for a *de novo* hearing and the ability to 'decide' all the issues before the Board of Appeals. The Charter does not limit how the Board of Appeals may decide the issues." *Hill*, 86 Md. App. at 651. Thus, that the Board "explicitly gave no deference to [ERS] in its decision and order" is of no moment, and any 'deference' to be allotted in this case belongs to the Board, not to ERS or the County Attorney.

Moreover, ERS misreads *Comptroller of Treasury v. Blanton*, 390 Md. 528 (2006), the case it uses to support its assertion that *it* is the agency to be afforded deference, not the Board. In *Blanton*, the taxpayers appealed their income tax assessment by filing a complaint with the Comptroller. *Id.* at 531. A hearing officer from the Comptroller's office affirmed the assessment, and the taxpayers again appealed. *Id.* The hearing officer's decision was affirmed by the Maryland Tax Court, but, after the taxpayers filed a petition for judicial review, the Tax Court's decision was reversed by the Circuit Court for Baltimore County. *Id.*

The Comptroller appealed, and, after issuing a writ of certiorari on its own initiative, the Court of Appeals reversed the circuit court's decision. *Blanton*, 390 Md. at 531. The Court explained that "[u]nless the *Tax Court's decision* was erroneous as a matter of law, or its conclusion was not supported by substantial evidence, we must affirm that decision." *Id.* at 535 (emphasis added). Clearly, the only deference paid by the Court was to the Tax Court, even though the initial decision in question was made by the hearing officer from the Comptroller's office. Here, instead of a hearing examiner, the decision was made by the BOT of ERS. That decision was appealed to the Board, and later to the circuit court for

10

judicial review. As such, it is the Board's interpretation and application of the statute that will be given "considerable weight," and not that of ERS. *See Board of Physician Quality Assurance*, 354 Md. at 69. Accordingly, our review is solely regarding the decision of the Board to allow Officer Bradford to switch his retirement option to Option 7.[2]

Here, because the facts are not in dispute, we review only the legal conclusions of the agency's statutory interpretation. *See Carven v. State Retirement & Pension System of Maryland*, 416 Md. 389, 406 (2010) ("An agency decision based on regulatory and statutory interpretation is a conclusion of law."). In *Carven*, (now Chief) Judge Barbera explained how a reviewing court determines whether such an interpretation is an erroneous conclusion:

> "[E]ven when reviewing an agency's legal conclusions, an appellate court must respect the agency's expertise in its field." *Crofton Convalescent Ctr. v. Dep't of Health & Mental Hygiene,* 413 Md. 201, 215, 991 A.2d 1257, 1265 (2010). When an agency interprets its own regulations or the statute the agency was created to administer, we are especially mindful of that agency's expertise in its field. *See Adventist Health Care* [*v. Maryland Health Care Com'n*]*,* 392 Md. [103,] 119, 896 A.2d [320,] 330 [(2006)] ("Administrative agencies possess an 'expertise' and, thus, have a greater ability to evaluate and determine the matters and issues that regularly arise, or can be expected to be presented, in the field in which they operate or in connection with the statute that they administer."); *Md. Aviation Admin. v. Noland,* 386 Md. 556, 573 n.3, 873 A.2d 1145, 1155 n.3 (2005) ("[An] agency's interpretations and applications of statutory or regulatory provisions which the agency

---

[2] We note that after Officer Bradford's hearing in front of the Board, but before the Board issued its opinion, it appears that the Baltimore County Council passed a bill that changed the procedure by which an employee can appeal a decision of the BOT. *See* Baltimore County Council Bill No. 7-13 (Passed on January 22, 2013). Article 5 now provides that an employee who wishes to appeal the decision of the BOT now must appeal that decision to the Baltimore County Office of Administrative hearings first, and only then may an aggrieved party appeal to the Board of Appeals. *See* Code § 5-1-220.2. This does not affect Officer Bradford's appeal, however, because the bill applied prospectively from the effective date of the bill, on March 4, 2013. *See* Bill No. 7-13 §§ 2 & 3.

administers should ordinarily be given considerable weight by reviewing courts." (internal quotation marks and citations omitted)). "Despite [this] deference, it is always within our prerogative to determine whether an agency's conclusions of law are correct." *Crofton Convalescent,* 413 Md. at 215, 991 A.2d at 1265 (internal quotation marks and citations omitted).

　　Keeping in mind the deference owed to administrative decisions, we shall conduct an independent review of the regulations and statutory provisions upon which the Board rests its decision to determine whether the Board's decision is "'plainly erroneous or inconsistent with the regulation.'" *Id.,* 991 A.2d at 1265 (quoting *Md. Transp. Auth. v. King,* 369 Md. 274, 288–89, 799 A.2d 1246, 1254 (2002)); *see also Noland,* 386 Md. at 574 n.3, 873 A.2d at 1156 n.3 ("[A] reviewing court must determine if the administrative decision is premised upon an erroneous conclusion of law." (internal quotation marks and citations omitted)).

*Carven*, 416 Md. at 406-07.

With respect to statutory interpretation, the Court of Appeals has frequently reiterated the principles that guide such a review, which the Court has summarized as follows:

- give effect to legislative intent

- look first to the "ordinary, plain meaning" of the language

- do not add or delete language

- do not apply forced or subtle interpretations

- keep in mind the statutory context

- consider the purpose, aim, or policy of the Legislature

- avoid constructions inconsistent with common sense

- presume that each section is to work harmoniously with others

*TransCare Maryland, Inc. v. Murray*, 431 Md. 225, 232 (2013) (citation omitted).

Looking to the plain language of § 5-1-231, we agree with ERS, insofar as its belief that the language of the section itself—in isolation—is "plain and unambiguous." Again, that section provides, in pertinent part:

> In lieu of the disability or service allowances payable under the provisions of this subtitle, any member may, prior to the first retirement allowance payment normally due, elect a retirement allowance of equivalent actuarial value in one (1) of the optional forms set out below. . . . A member who has elected an optional benefit may not change such election after the first payment of the member's allowance becomes normally due, except as provided below.

Code § 5-1-231(a). The exceptions referenced in subsection (a) are found in subsections (b) and (c), which allow for certain retired members who chose Options 2 or 3 (subsection (b)), or for certain retired members who chose Options 5 or 6 (subsection (c)), to change their options after they have already received their first payment. *See* Code § 5-1-231(b)-(c). It is undisputed that Officer Bradford received payments under Option 4 before returning to work, and that Officer Bradford does not fit into the exceptions of § 5-1-231(b)-(c).

We do not agree with ERS, however, that the circuit court "went to extraordinary lengths" to "avoid" the plain language of § 5-1-231, or even, as ERS puts it, that "the language of § 5-1-231 is so clear that deference is unnecessary." As the Court of Appeals has stated, "[t]he 'plain meaning' of a statute can only be assessed in the context in which it appears." *Patton v. Wells Fargo Financial Maryland, Inc.*, 437 Md. 83, 96-97 (2014). Here, the Board correctly noted in its opinion that the ambiguity in this case exists not within the language of § 5-1-231 itself, but rather how that language applies to an officer in Officer Bradford's situation. Had Officer Bradford not returned to the BCPD in 1999,

13

there would be no ambiguity, and Officer Bradford would not be able to change his allowance option now, as he fits into neither of the listed exceptions.

It is undisputed, however, that Officer Bradford did in fact return to the BCPD for 13 additional years, pursuant to Special Rule 2.14, before retiring a second time in 2012. The question then becomes: what is—as the Board called it—the "net effect" of § 5-1-231 and Special Rule 2.14? In order to resolve that ambiguity, "we turn to our arsenal of other statutory interpretation forensic tools." *Maryland Ins. Comm'r v. Central Acceptance Corp.*, 424 Md. 1, 36-37 (2011) (citing *Breslin v. Powell,* 421 Md. 266, 287 (2011)).

First, we agree with the Board that Special Rule 2.14 is the "operative law" in terms of this review.[3] "Under the standard rules of statutory construction, to the extent that there is a conflict between the two provisions, the later enacted provision . . . prevails." *Patton*, 437 Md. at 107. Special Rule 2.14 was enacted by the County Council of Baltimore County on May 3, 1999, as Bill No. 35-99, as "an act concerning personnel law of Baltimore County." Subsection (a) of the rule, in effect, allows the County to rehire a former sworn officer within 24 months of the officer's separation, provided the separation was "without prejudice" (*i.e.*, not for disciplinary reasons) and the officer met certain eligibility requirements. Especially relevant here is subsection (b), which essentially explains the circumstances of an officer's rehiring under the Rule. It provides, in pertinent part:

---

[3] We also note that we disagree with ERS's implied assertion that Officer Bradford's reliance on Special Rule 2.14 is "misguided," simply because Special Rule 2.14 appears in Article 4, rather than Article 5. To view the optional allowance section in such extreme isolation would be illogical for any number of reasons; not least of which being that Article 5 is not, and does not purport to be, a self-contained article within the Code.

> The *rehired* employee's anniversary date shall be the date of *rehire*. *Time away shall be considered as leave without pay for the purposes of calculating service and longevity credit.* The *rehired* employee's sick leave balance at the time of resignation shall be restored unless it was used to determine the creditable service requirement, and other leave accruals shall be based on the adjusted service time. Benefits may not be earned for the time away from county service.

(emphasis added). Clearly, Special Rule 2.14 was written to ensure that a returning officer will be treated in almost the exact same way he was before he left. As the circuit court pointed out, Special Rule 2.14's language notably addresses only the effect on the separation from employment, and has no such language with respect to a retirement. Those involved in the negotiations surely would have recognized that—at the very least—a large portion of those officers with a "separation" that was "without prejudice" would have been retired, and if they wanted to ensure that any subsequent retirement was to be in the exact circumstances of the first, they could have done so.

Furthermore, we believe this result is in accordance with the principle that, "[w]henever possible, the various parts of a statute should 'be reconciled and harmonized to be consistent with the statute's object and scope.' Our interpretation should avoid illogical, absurd, or anomalous results." *Blackburn Ltd. Partnership v. Paul*, 438 Md. 100, 122 (2014) (citation omitted). In our view, the record reflects that the statutory scheme was enacted by the County as a way to entice officers into staying with the BCPD beyond the twenty-year service requirement.

For example, Code § 5-1-214(b)(2), provides that an officer that is rehired pursuant to Special Rule 2.14 is not eligible to receive an increased service retirement allowance until the officer has stayed an additional five years—in the County Attorney's words, "a

15

sort of vesting requirement." Section 5-1-214(b)(2) was enacted in Bill No. 38-99, which passed as a companion bill with Bill No. 35-99, the bill that enacted Special Rule 2.14. While ERS is correct in asserting that § 5-1-214(b)(2) is not an additional exception to § 5-1-231(a), it does not appear to purport to be one. It does, however, support the Board's finding that "the underlying 'legislative scheme' was to encourage retired officers to return to duty in exchange for their reinstatement as sworn officers with their prior retirement being treated as leave without pay."

Moreover, we are unpersuaded by ERS's reliance on § 5-1-231(b) and (c) as proof that "[t]he County Council *specifically* chose *not* to allow a member who chose Option 4 to change his or her election after receiving a first payment, although the Council clearly could have and knew how to do so as evidenced in subsections (b) and (c)," for two reasons.

First, as we have pointed out, when Officer Bradford was rehired pursuant to Special Rule 2.14, he was just that—*rehired*. Officer Bradford was reinstated at the same level he was, and worked an additional 13 years before retiring in 2012. To interpret § 5-1-231 as requiring him to keep Option 4 after the County, for all intents and purposes, treated him as a fully-restored police officer for an 13 extra years would be the "illogical, absurd, and anomalous result" we seek to avoid in interpreting statutes.

Second, ERS's invocation of the maxim of statutory construction known as *expressio unius est exclusio alterius*—meaning that the expression of one thing implies the exclusion of another thing not mentioned—is belied by the language of § 5-1-231(b) and (c). Subsection (b) allows "retired members" who chose Option 2 or 3 to change their option in the event of the death of or divorce from their beneficiary, and subsection (c)

16

allows "retired members" who chose Option 5 or 6 to designate a new beneficiary and change their option if their beneficiary has died or been divorced and had their allowance recalculated as a result. *See* Code § 5-1-231(b)-(c). Clearly, those exceptions were designed only for "retired members" who were remaining retired— which, at the time he attempted to switch options, Officer Bradford was not. By including language that applied to *retired* members, it does not automatically follow that the County Council was impliedly excluding members who were once, but were then no longer, retired.

## CONCLUSION

For the above reasons, we agree with the Baltimore County Board of Appeals. The circumstances of Officer Bradford's rehiring meant that his 1998 retirement was "render[ed] . . . a nullity," and therefore, he should not be prevented from changing his retirement option. Accordingly, we affirm the decision of the Circuit Court for Baltimore County.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**